# Richmond.

## JULIA HITE GALLAGHER v. WAYNESBORO MUTUAL TELEPHONE COMPANY.

### November 12, 1925.

1. NEGLIGENCE—*Burden of Proof—Necessity of Proving Negligence—Cause of Injury.*—In an action for injury due to the negligence of defendant, a plaintiff can only recover by showing that the defendant's negligence is the cause of the injury, and unless this is sufficiently proved there can be no recovery.

2. ELECTRICITY—*Negligence—Res Ipsa Loquitur.*—The doctrine of *res ipsa loquitur* has no application where the injury complained of is due to a defective electric appliance which is neither managed, operated, owned or controlled by the defendant company, but belongs to the owner or subscriber of another line with which by law the defendant company is required to connect.

3. NEGLIGENCE—*Liability for Negligence—Negligence of Another than Defendant.*—A defendant is responsible for his own negligence and for that of his agents and associates over whom he has control, but he cannot be held responsible for the negligence of another of which he is ignorant and which he has no power to foresée or prevent.

4. TELEGRAPHS AND TELEPHONES—*Negligence—Liability for Injury to Subscriber from the Negligence of the Owner or Subscriber of Another Line—Case at Bar.*—In the instant case plaintiff was injured while using a telephone furnished by defendant company. Defendant owned and operated a telephone system in a town, the plaintiff being one of its subscribers. In the county there were certain telephone lines privately owned and controlled, with which, by law, defendant was required to connect. Plaintiff's hearing was injured while calling the owner of one of these privately owned lines. The only suggestion as to the cause of the injury was the dangerous proximity of electric light wires to the telephone wires on this privately owned line, which condition did not exist at the time defendant connected its line with the privately owned line. No negligence whatever was shown with respect to the equipment, maintenance and operation of defendant's line and the affirmative evidence, negatived any such negligence.

   *Held:* That the court did not err in sustaining a demurrer to the evidence of plaintiff.

Error to a judgment of the Circuit Court of Augusta county, in a proceeding by motion for a judgment for damages. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Charles Curry* and *Rudolph Bumgardner*, for the plaintiff in error.

*S. D. Timberlake, Jr.,* and *J. M. Perry,* for the defendant in error.

PRENTIS, P., delivered the opinion of the court.

The plaintiff was injured while using a telephone furnished her at her residence by the defendant company, and sued for serious permanent injury affecting her hearing in the left ear. At the trial the defendant demurred to the plaintiff's evidence, in which demurrer the plaintiff joined, the court sustained the demurrer and entered judgment thereon in favor of the defendant, and the plaintiff is here assigning error.

The pertinent facts are that the defendant owns and operates a telephone system in the town of Waynesboro, the plaintiff being one of its subscribers. There are certain telephone lines which appear to be privately owned and controlled by certain farmers of Augusta county. These farmers' lines are carried to the corporate limits of the town of Waynesboro and are there connected with the wires of the defendant which run into its switchboard. The defendant is required by law and in the public interest to connect with these lines and to interchange service therewith.

Howard Bush was one of some fifteen or sixteen farmers

who had grounded lines so coming into Waynesboro and was furnished service at the rate of $5.00 per year. These lines outside of the city limits were built and controlled exclusively by their owners, and the defendant company had no control whatever over them. In connecting these county lines (ground circuit) with its own line (metallic circuit) the defendant employed every known and improved device to protect its subscribers from any injury which might result from lightning or other dangerous currents of electricity. No negligence whatever is shown with respect to the equipment, maintenance and operation of the defendant's line, and the affirmative evidence negatives any such negligence.

The plaintiff, because partially deaf in her right ear, had the company install a telephone with an unusually large bell. On the occasion of her injury she called through the central office for connection with the telephone of Bush, to talk with Mrs. Bush. She pressed the receiver very tightly to her left ear, and then sustained the injury complained of. Mrs. Bush at the other end of the connection heard nothing unusual except the plaintiff's scream. There was no blowing out of any of the protective fuses on the defendant's lines, neither the telephone at the residence of the plaintiff nor that at the residence of Bush was in any degree injured or affected, both were used within half an hour afterwards and were then found to be in perfect condition.

As to the Bush line, these facts appear: He lived within a mile of the corporate limits of Waynesboro, on the road running from Waynesboro to New Hope. He was one of the owners of the farmers' line, known as the Central Point line, which had been connected with the Waynesboro exchange for many years. His

home was a quarter of a mile from the road, to which his lane extended. The wires of the Central Point farmers' line were on poles on one side of the Waynesboro—New Hope road, but Bush built a pole line in his lane so as to connect with the Central Point wires on the highway. This line in his lane belonged to him. About two years before the plaintiff was injured, Bush, desiring to obtain electric lights at his house, put an electric light wire on poles in his lane so as to connect with the electric light line owned by the Staunton Light Company, and at some time before the injury he changed the location of his telephone wire and put it on the same poles that already carried the electric light wire. At one point he placed these wires only about seventeen inches apart. It is fairly apparent that these wires were so located at the time of the plaintiff's injury. There is nothing to indicate that the defendant company had any information whatever as to the location of these wires so improperly placed by Bush. Bush afterwards removed the telephone wire from these electric light poles because there had been considerable trouble and complaint about noises occasioned by the proximity of the telephone wire to the electric light wire.

The sole suggestion as to the cause of the injury which can be found in the record is that in some way it was because of the dangerous proximity of this electric light wire to the telephone wire in Bush's lane.

[1, 2] It is fundamental, of course, that a plaintiff in such an action can only recover by showing that the defendant's negligence is the cause of the injury, and unless this is sufficiently proved there can be no recovery. Some reliance appears to be placed by the plaintiff upon the doctrine of *res ipsa loquitur*, but

this does not apply where the injury is due to a defective appliance which is neither managed, operated, owned or controlled by the defendant.

In *Peters* v. *Lynchburg Traction Co.*, 108 Va. 333, 61 S. E. 745, 22 L. R. A. (N. S.) 1188, in which the plaintiff was injured by a shock while turning off an incandescent electric light in his kitchen, it was held that he could not recover of the company which furnished the current of electricity, because he was himself the owner of the electric outfit on his premises. It was shown there that the defendant company had neither the ownership nor control of the appliances on the plaintiff's premises, the house having been wired by the owner, and the electric equipment being his own property.

In *Fickeisen, Adm'r*, v. *Wheeling Electric Co.*, 67 W. Va. 335, 57 S. E. 788, 27 L. R. A. (N. S.) 893, these were the salient facts: The Wheeling Company sold and delivered to the Bridgeport Company, at a point where the wires of the two companies joined, the electricity used by the latter company in lighting the streets of Bridgeport. A wire of the Bridgeport Company which carried the electric current along a street in Bridgeport was grounded, and one who came in contact with it was killed by the current. It was held that the Wheeling Company was not liable in the action for the death of such person; the reason therefor being that when the Wheeling Company delivered the electricity to the Bridgeport Company, its responsibility ceased because it had no ownership, management or control of any of the wires or appliances of the Bridgeport Company.

This is clearly the actual and legal situation here, as is stated in the case of *Commonwealth* v. *Staunton Telephone Co.*, 134 Va. 291, 114 S. E. 600, where

this is said: "In addition it was customary for many years for farmers located in Augusta county to build their lines and install their own telephones, and to have their private lines connected with the lines of the city company at the corporate limits of the city. The city company had no responsibility with reference to the maintenance of these lines outside of the corporate limits of the city."

These cases illustrate and enforce the same rule: *Perry* v. *Ohio Valley, etc., Co.*, 70 W. Va. 697, 74 S. E. 993; *Pressley* v. *Bloomington, etc., Co.*, 271 Ill. 622, 111 N. E. 511; *Sullivan* v. *New York Tel. Co.*, 157 App. Div. 642, 142 N. Y. Supp. 735; *Scott* v. *Rome, etc., Co.*, 22 Ga. App. 474, 96 S. E. 569; *Minneapolis Gen. Elec. Co.* v. *Cronon*, 166 Fed. 651, 92 C. C. A. 345, 20 L. R. A. (N. S.) 816; *Hoffman* v. *Leavenworth, Light, etc., Co.*, 91 Kan. 450, 138 Pac. 632, 50 L. R. A. (N. S.) 574; *San Antonio Gas, etc., Co.* v. *Ocon*, 105 Tex. 139, 146 S. W. 162, 39 L. R. A. (N. S.) 1046; 9 R. C. L. 1204, sec. 15.

[3] If we were to adopt the plaintiff's view and hold that the defendant company could be held responsible for negligence which in this instance occurred in Mr. Bush's lane, as his wires connected with the Central Point farmers' line over which the defendant has no supervision or control whatever, then to be consistent we would be driven also to hold that the owners of the Central Point farmers' line and its connections could be held, jointly or severally, liable for negligence of the defendant company occurring on its lines within the town of Waynesboro, in which they have no interest and over which they have no control. A defendant is responsible for his own negligence and for that of his agents and associates over whom he has control, but he cannot be held responsible for the negligence

of another of which he is ignorant and which he has no power to foresee or prevent.

[4] Our conclusion, therefore, accords with that of the trial court judge, Hon. Henry W. Holt, who has thus expressed his views:

"This is an action by motion to recover damages for personal injury suffered by the plaintiff in 1921. She was a phone holder of the defendant company which operated in the town of Waynesboro. On said date she called a Mrs. Bush over the phone, who lived in Augusta county near Waynesboro, and who was herself a phone holder on a county line that ran into the plaintiff's (defendant's) switchboard or exchange. On page 13 of plaintiff's deposition is her account of the manner in which the accident occurred:

"'A. Well, I stepped to the phone, it was in my back hall. I was in the dining room and I stepped out into the back hall, where our phone is, and I called up Mrs. Howard Bush to ask if she was coming in that night, she had said several days before that she was coming and I stepped to the telephone and I said: "Central, please give me 9 F 14—Mrs. Howard Bush," and I heard a click, just as you always hear it when your party takes her phone down, and I said: "Hello, is that you?" and she said: "Yes," and just as I asked her if she was coming in that night there was a terrible roar, rumbling and jangling. I thought it had ruptured my ear, it was so painful, and I threw the receiver from me, and my sister who was standing there, caught me, or I would have fallen to the floor, and my ear hurt me so that I couldn't speak for fifteen minutes. It was a terrible report, I just felt as if something dreadful had occurred, I never felt anything like that before in my life.

" 'Q. It was a terrible roar?

" 'A. Just like a lot of chains and bells jangling; it made the most awful fuss and roar, just like machinery crushing up, and I suffered from it intensely for several days. I don't suppose I would have suffered as much, if I had a perfect ear, but my hearing in this ear, the other one, had been impaired for a long while, and of course I pressed the receiver closer to my ear, I always do, in order to hear distinctly, and when this crash came, it was the worst experience I ever had in my life, and I suffered intensely several days from it.'

"At page 34, she again described what occurred: 'I never heard anything like that before in my life. Of course you often hear noises on the phone when others ring off, but nothing in the world like this. I never heard such a crash and roar as this in all my life. I was simply dazed from it, and fell back from the phone.'

"Dr. H. S. Hedges, a distinguished specialist, was called to testify on behalf of the plaintiff. He stated that he did examine her ear and that it was injured and that the injury probably occurred as she stated it had occurred, but that it was not possible to say if it was due to the roar and crash testified to or to a more direct electric current. It will be noted that the plaintiff attributes it to the roar and crash and no one has a better case than the case which she herself states. But in any respect, we have injury which may have been occasioned by one of two causes and we have a case in which there is no evidence to show that it was occasioned by an electric current as distinguished from the intermediate electrical phenomenon to which the roar and crash must be attributed, and it is always necessary before a recovery that the plaintiff place his hand upon some cause which occasioned the injury—

not upon two or more causes which may have occasioned, for one of which the defendant is liable and for the other not.

"These county lines go to the corporate limits. They are there taken over by the defendant and carried to its own switchboard. The evidence is that in doing this every device known to science is adopted for the protection of phone holders and the evidence further is that while it is possible to make phone users safe from direct electric currents, it is not possible in the present state of the art to prevent noises of the character of that complained of, just as it is not now possible to avoid 'static' in radio messages. Why in this particular instance it was unusual there is nothing to show. The probabilities are that the accident was due in a large measure to the fact that the plaintiff, because of her partial deafness, had the receiver pressed close against her ear.

"The plaintiff's theory is that the cause from which the trouble came was the placing of a high power electrical line on the same poles that carried the Bush county telephone line and that by induction or direct contact the telephone wire took up power from the power line. The telephone line had been in operation about fifteen years. Long after it was installed the power wire was attached to the telephone poles. This was done without either the knowledge or consent of the defendant, and the defendant did not know that this had been done until after plaintiff's accident. These town and city switchboards are compelled to give connection to county lines. On the other hand they are given no control over them and when the connection in this case was made an actual inspection would have disclosed nothing, for the power line had not then been attached. It may well be that the tele-

phone company, when it brought into its switchboard a county line, could refuse the connection and is liable if it knew or even ought to have known, of any dangerous condition, but it cannot be that the city phone companies are liable for dangerous conditions which afterwards arise in the county without their knowledge, conditions for which they are not responsible or that they are charged with the duty of continuous inspection.

"This, then, is the situation. The accident may have been occasioned by noise, * * * * * * * * * * * * * * * * * * * * *. This noise appears to have been due to conditions on a county connecting line, which conditions did not obtain when that line was connected and which attached afterwards without the consent of the defendant and without its knowledge, and this status obtained up to the time of the accident; the defendant had installed all proper devices to prevent injury by direct electric shock, while it is not possible to install any device that would eliminate noise or prevent such unusual accident as that set up here.

"The demurrer to the evidence must be sustained."

*Affirmed.*