Charles L. McDOWELL,
Plaintiff-Respondent,

v.

SOUTHWESTERN BELL TELEPHONE
COMPANY, a corporation,
Defendant-Appellant.

No. 37079.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Dec. 7, 1976.

James E. Taylor, Kansas City, Oliver, Oliver & Jones, John L. Oliver, Jr., Cape Girardeau, for defendant-appellant.

Schnapp, Graham & Reid, Maurice B. Graham, Fredericktown, for plaintiff-respondent.

GUNN, Judge.

Plaintiff-respondent brought a negligence action against defendant-appellant Southwestern Bell Telephone Co. to recover damages for injuries sustained while plaintiff was using a telephone installed in his residence by the defendant. Plaintiff alleged that his injury was caused by a severe acoustical trauma brought about by a loud noise. The case was submitted to the jury on a res ipsa loquitur theory, and the jury returned a verdict in favor of plaintiff for $10,000.

On appeal, the defendant raises the following points: 1) error was committed in allowing plaintiff to introduce and comment on out-of-court statements of an employee relating to the source of the loud noise which produced plaintiff's injury; 2) that the doctrine of res ipsa loquitur was wholly inapplicable to the facts of the case, particularly as there was no evidence of defendant's control over the receiver from which the loud noise was alleged to have emanated; 3) that there was no substantial evidence to establish proximate causal relationship between any negligence and plaintiff's injury; 4) plaintiff's verdict director improperly modified the MAI; 5) plaintiff's

damage instruction was not supported by evidence; 6) plaintiff's closing argument contained prejudicially erroneous comments; 7) the jury verdict was excessive. We find no reversible error and affirm the judgment.

While talking on the telephone with Mrs. Alice Johnson, plaintiff experienced a sensation in his left ear. As plaintiff related, it "was like someone hit me, slapped me across the head, hard." Plaintiff's wife, who was present at the time, saw the house lights blink and then almost immediately noticed an expression on plaintiff's face as he held the telephone away from his ear. She testified that plaintiff exclaimed, "it bit me." Plaintiff's wife picked up the receiver and held it to her ear and heard a cracking and popping sound. Mrs. Johnson testified that she heard a sound over the telephone which she characterized as "kinda lightning and thunder run in on the telephone. . . . It roared like lightning when it does on a wire." Mrs. Johnson also testified that it "shook up" her ear.

Immediately after the incident, the plaintiff was stunned and dazed and began to have an earache and headache. He suffered some dizziness and had double vision and began to experience a buzzing sound in his left ear "like a cricket or a small electric motor running." He noticed that he was having hearing problems in his left ear and difficulty discerning sound location.[1] There was medical testimony that the plaintiff suffered a labyrinthine concussion in his left ear at the time of the initial trauma with some mild to moderate sensory neuro hearing loss in the speech frequency range. The buzzing sound in plaintiff's left ear was diagnosed as tinnitus.

Plaintiff's telephone was not rendered inoperative by the incident. Two days after the occurrence, plaintiff's wife called defendant's Fredericktown office to report the incident. She was referred to defendant's employee, Harold Richardson, who, as wire chief, was in charge of wires and maintenance in the Fredericktown area. Richardson examined the telephone unit and the devices designed to prevent excessive noise from coming through the customer's receiver and found them to be in proper order. Defendant also presented expert testimony to the effect that the sound protective devices functioned properly when tested and afforded adequate sound protection. However, one of defendant's expert witnesses did concede that if the plaintiff and Mrs. Johnson were telling the truth and accurately described what happened, then the telephone and its protective devices would not have been functioning properly. Over defendant's objection, plaintiff's wife testified that wire chief Richardson had told her that the only cause of the incident that he could give would have been a "power surge."

I

■ Defendant's first point of alleged error concerns statements attributed to Harold Richardson regarding the possible cause of the noise. Defendant also asserts that it was error to permit the reading of a portion of Richardson's deposition which related to his explanation as to the cause of the noise.

In response to plaintiff's wife's complaint, Richardson came to plaintiff's home and inspected the telephone system. Plaintiff's wife testified that when Richardson completed his examination she asked about the cause of the noise. Over defendant's objection, plaintiff's wife was permitted to relate the conversation: "I asked him what could have caused something like this and he said the only thing he could think of was a power surge." Plaintiff's counsel over objection also read portions of Richardson's deposition in which Richardson reaffirmed what plaintiff's wife related by stating: "I believe that I did mention it to Mrs. McDowell that it would be my opinion that a power surge would have been the only thing I could see that would even cause it."

1. There was also medical testimony that the plaintiff has hearing problems in his right ear in higher sound frequencies, but he makes no claim that the problems with the right ear are related to the acoustical trauma.

Defendant contends that Richardson's statement to Mrs. McDowell and his depositional statement constituted inadmissible hearsay, inasmuch as the plaintiff failed to establish that it was within the scope of Richardson's employment to make such statements on behalf of defendant. Defendant relies primarily on *Roush v. Alkire Truck Lines Inc.,* 299 S.W.2d 518 (Mo.1957), in this regard.[2] But even if we were to consider that it was error to admit both Mrs. McDowell's testimony and Richardson's deposition, such alleged error cannot be held to be prejudicial. Richardson testified as a witness in defendant's case. During direct examination, Richardson stated that he told Mr. McDowell that a power surge could have caused the noise: "After examining the telephone and finding no visual evidence of damage to the telephone itself, I then related to Mrs. McDowell, if Mr. McDowell was standing near the electric stove or anything like this; I said something like that. When the power company is overloaded you may get a power surge and cause a buzzing in the telephone or popping." On cross-examination during trial, Richardson reiterated that he had told Mrs. McDowell that a power surge might have caused the problem:

"Q. And you did tell Mrs. McDowell that a power surge was the only thing that you could think of that might have caused this problem?

A. [Richardson] Yes.

Q. And, of course, you meant the power surge coming over the telephone.

A. Coming back through the telephone system."

Thus, if Richardson's in-court testimony as a witness for defendant was consistent with his deposition and the statement attributed to him by Mrs. McDowell, defendant was not prejudiced by the latter statements even had they been inadmissible. *Kagan v. St. Louis Public Service Co.,* 334 S.W.2d 379 (Mo.App.1960), is a case in point. In *Kagan,* defendant contended that under *Roush v. Alkire Truck Lines,* supra, error was committed in permitting the plaintiff to testify about a statement made by the operator of defendant's vehicle after an accident. While acknowledging that it was error to have admitted the operator's statement (we do not necessarily find Richardson's statements to Mrs. McDowell to be error), the Court of Appeals found the statement to be non-prejudicial as the operator later testified to the same effect at trial. Based on the evidence on this case, we find no prejudicial error, as Richardson in trial on direct and cross-examination reaffirmed what had been said by Mrs. McDowell and in his deposition.

■ Defendant also suggests that Richardson was not qualified by position or experience to state his opinion that a power surge would have been the cause of the incident leading to plaintiff's injury. We find defendant's argument in this regard to be somewhat specious. The record is clear that at the time of the investigation, Richardson was defendant's wire chief for the Fredericktown area.[3] Both defendant's own counsel on direct examination and plaintiff's counsel on cross-examination established Richardson's impressive knowledge of the defendant's telephone system and his technical expertise to expound on its workings including, at the request of defendant's counsel, an elaboration as to "power surge"; that it was Richardson's particular responsibility to investigate and determine the cause of the type of problem called in by plaintiff. The trial court found

2. Defendant's objection to the use of Richardson's deposition should have been on the ground that it was in violation of Rule 57.07(a), in that Richardson was not a designated party authorized to give a deposition. Although the motion for new trial sets forth Rule 57.07(a) as reason for not permitting use of Richardson's deposition such objection should have been asserted at trial at the time the alleged error for the use of the deposition occurred.

3. Defendant infers that Richardson was only a "repeaterman" at the time of the accident. The record makes such contention chimerical, for it is clear from the record through defendant's counsel's direct examination of Richardson that he was wire chief at the time of the accident, and his "job was to supervise the installation and maintenance of the telephone system in Fredericktown for the outside and inside plant department."

Richardson to be an expert witness and from our review of the record on Richardson's qualifications we cannot find that the trial court abused its considerable discretion in permitting Richardson to testify as to the cause of the loud noise causing plaintiff's injury, particularly since a portion of Richardson's opinion was given at defendant's counsel's behest. *State ex rel. State Hwy. Com'n v. Reynolds,* 530 S.W.2d 34 (Mo.App. 1975).

## II

The second point argued on appeal by the defendant is that the doctrine of res ipsa loquitur is wholly inapplicable to a case in which a plaintiff claims to have suffered acoustical trauma from a telephone. The term "res ipsa loquitur" literally translated means "the thing speaks for itself." *Maybach v. Falstaff Brewing Corp.,* 359 Mo. 446, 222 S.W.2d 87, 89 (1949). The doctrine is applicable only when the facts produced speak of the negligence of the defendant. *Charlton v. Lovelace,* 351 Mo. 364, 173 S.W.2d 13, 18 (1943). When the doctrine is applied "it operates as a substitute for proof of specific negligence . . . (cites omitted) and permits the ultimate fact of the defendant's actionable negligence to be established by the showing of a particular kind of circumstantial evidence relating solely to the unusual character of the accident itself." *Brown v. St. Louis County Gas Co.,* 131 S.W.2d 354, 359 (Mo. App.1939). The doctrine serves as an aid to a plaintiff who does not know and cannot plead or adduce proof showing the specific cause of his injury. *LoBello v. Laclede Gas Co.,* 517 S.W.2d 474 (Mo.App.1974). Establishing a prima facie res ipsa case creates a substantial factual inference of the defendant's negligence that constitutes sufficient evidence of the defendant's negligence. *Clark v. Linwoood Hotel, Inc.,* 365 Mo. 982, 291 S.W.2d 102 (1956); *Maybach v. Falstaff Brewing Corp.,* supra; *Collins v. Nelson,* 410 S.W.2d 570 (Mo.App.1965). For a prima facie res ipsa case, the plaintiff must establish the following three elements: 1) the occurrence resulting in injury was such as does not ordinarily happen if those in charge exercise due care; 2) the instrumentalities were under the management and control of the defendant; and 3) the defendant possesses superior knowledge or means of information as to the cause of the occurrence. *McCloskey v. Koplar,* 329 Mo. 527, 46 S.W.2d 557 (banc 1932); *Furlong v. Stokes,* 427 S.W.2d 513 (Mo.1968); *Willis v. Terminal R.R. Assoc.,* 421 S.W.2d 220 (Mo. 1967); *Walsh v. Phillips,* 399 S.W.2d 123 (Mo.1966); *Long v. Spanish Lake Service, Inc.,* 507 S.W.2d 935 (Mo.App.1974). If one of the above elements is not present, then the case is not properly one for application of the res ipsa loquitur doctrine, *Brown v. St. Louis County Gas Co.,* supra, and the burden is on the plaintiff to prove each factual ingredient necessary to establish a prima facie case. *Shafer v. Southwestern Bell Telephone Co.,* 295 S.W.2d 109 (Mo. 1956). It should further be noted that the burden does not shift to the defendant after the plaintiff has made a prima facie res ipsa loquitur case. *McCloskey v. Koplar,* supra.

It is the defendant's contention that the res ipsa loquitur doctrine cannot be applied to a situation where a plaintiff is exposed to a loud sound transmitted through his telephone. The defendant contends that negligence cannot thereby be inferred, and, hence, the first element of a res ipsa case cannot be established. Whether or not an occurrence would ordinarily happen if those in charge use due care is a question of law and not a question of fact for the jury. *Long v. Spanish Lake Service, Inc.,* supra. As there are no Missouri res ipsa cases in which a plaintiff seeks to recover for acoustical trauma caused by a telephone, we look to other jurisdictions for guidance. *Eyerman v. Mercantile Trust Co., N.A.,* 524 S.W.2d 210 (Mo.App.1975). In *Gandy v. Southwestern Bell Telephone Co.,* 341 S.W.2d 554 (Tex.Civ.App.1960), the doctrine was found to be applicable to an acoustical trauma case similar to the case before this court. In *Gandy,* the plaintiff was talking to her sister over the telephone when they both heard a loud, clashing noise through their respective telephone receivers. The plaintiff became partially deaf in one ear after the incident. She brought suit

against Southwestern Bell, basing her action on res ipsa loquitur. In holding that the doctrine could apply, the court compared the acoustical trauma situation with cases in which persons using telephones received electrical shocks, and found a duty on the part of the defendant to prevent the transmission of dangerous amounts of sound: "As in the case of the transmission of electricity, the utility is under a duty to use the known necessary devices and methods to prevent the passage of dangerous amounts (of noise)." *Id.,* 341 S.W.2d at 556. The court recognized that although the the telephone company's negligence may not have created the noise itself, e.g. the court notes that the noise could have been caused by a third party slamming down the extension of the party lines involved, it stated that the company is not thereby relieved of its duty to safely control the excessive sound that its phone lines emit. *Id.,* 341 S.W.2d at 557. The court concluded that there was ample evidence to show that the sound did in fact occur,[4] which permitted the inference to be drawn that whatever the origin, the maximum sound transmitted was negligently controlled by the telephone company. *Id.,*341 S.W.2d at 557–58. See also *Scott v. Diamond State Telephone Co.,* 239 A.2d 703 (Del.1968), which also recognized that an acoustical trauma case can be properly brought on a res ipsa theory.[5]

We agree with the Texas court in *Gandy v. Southwestern Bell Telephone Co.,* supra, that the telephone company has a duty to use known devices and methods to prevent the passage of dangerous amounts of sound. If a plaintiff can show that he was exposed to an excessive noise or sound when using the telephone, and, parenthetically, has also satisfied the two other elements of a res ipsa case, it can be inferred that the defendant breached this duty and was thereby negligent. We therefore disagree with the defendant's position that the res ipsa doctrine can never be applied when a person using a telephone experiences an excessive sound and is thereby injured. There are Missouri decisions which have held the res ipsa loquitur doctrine applicable to cases in which a person received an electrical shock while using the telephone, and these cases lend support to our position. *Robinson v. Southwestern Bell Telephone Co.,* 434 S.W.2d 249 (Mo.App.1968); *Joyce v. Missouri & Kansas Telephone Co.,* 211 S.W. 900 (Mo.App.1918); *Warren v. Missouri & Kansas Telephone Co.,* 196 Mo.App. 549, 196 S.W. 1030 (1917). The defendant contends that the electrical shock cases are not in point. We see no distinction between the situation in which a person has received an electrical shock through the telephone receiver and the situation in which a person is exposed to acoustical trauma. In both cases it can be inferred that the telephone company breached its duty to use the highest degree of care practical in making safe the use of its phones and was thereby negli-

**4.** In addition to the testimony of the plaintiff and her sister describing the noise, there was evidence indicating that the noise had occurred. Both the plaintiff's and her sister's phones went dead for several hours after the occurrence. The following day the plaintiff's phone, which was about 30 years old, was removed and taken out of service. The earpiece of the plaintiff's phone was cracked. Of course, in the instant case, there was no indication of damage to the receiver.

**5.** In *Scott v. Diamond State Telephone Co.,* supra, the plaintiff, while on the telephone, was knocked off his feet by a loud explosive noise that came over the telephone. The plaintiff submitted his case on a res ipsa theory. The defendant introduced evidence tending to show that it was not negligent. The trial court, in this judge-tried case, entered judgment on the

merits for the defendant, holding that the plaintiff had not established the defendant's liability by the preponderance of the evidence. This ruling was affirmed on appeal. After noting that the doctrine of res ipsa loquitur permits but does not compel the trier of fact to draw an inference of negligence, the court reviewed the evidence supporting the findings and conclusions of the trial judge. The appellate court found that after balancing the inference created by the facts of the accident against the defendant's evidence, the trial court could properly have concluded that the plaintiff failed to show the defendant's liability by a preponderance of the evidence. It is important to note, however, that the court expressly stated that the case was properly submitted as a res ipsa loquitur case. *Id.,* 239 A.2d at 705.

gent. In *Joyce,* the plaintiff claimed to have received an electrical shock while using a telephone. In holding that the res ipsa loquitur doctrine properly applied to the case, the court said:

"[An electrical shock] does not follow when ordinary care is used in the management and construction of such instruments, and when it does it suggests something wrong with the management, the machinery, or the device, which, if not explained by the party charged, will raise a presumption of negligence against him." *Id.,* 211 S.W. at 902.

And, indeed, one of defendant's experts did acknowledge that if the plaintiff and his witnesses were relating the truth, the protective devices were malfunctioning. In *Warren v. Missouri & Kansas Telephone Co.,* supra, the doctrine was held to apply when an electrical shock was received from the telephone. The court said that the "defendant is required to use the highest degree of care practical in making safe the use of its phones." *Id.,* 196 S.W. at 1031. Although the defendant argued in *Warren* that it had exercised the requisite degree of care, the court responded: "The credibility of the explanation and its sufficiency were questions for the jury, and the prima facie case of the plaintiff is not necessarily overthrown by uncontradicted evidence that the appliances were constructed and operated in a proper manner." *Id.,* 196 S.W. at 1033. And in *Seeley v. New York Tel. Co.,* 281 App.Div. 285, 120 N.Y.S.2d 262 (1953), in which the plaintiff and the other party on the telephone both testified that they received electrical shocks, the court, in holding that res ipsa loquitur applied, said: "Such incidents do not ordinarily happen if reasonable care is used in the installation, maintenance and control of telephone lines." *Id.,* 120 N.Y.S.2d at 266. See also *Hanaman v. New York Tel. Co.,* 278 App. Div. 875, 104 N.Y.S.2d 315 (1951).

The defendant relies on *Katz v. New England Telephone & Telegraph Co.,* 145 A. 14 (R.I.1929), which held that the plaintiff could not use the res ipsa doctrine in an acoustical trauma case. In *Katz,* the plaintiff alleged that she was injured when a loud noise or explosion came through the receiver of her telephone. In affirming a directed verdict for the defendant, the court stated that the evidence demonstrated that a great amount of voltage was required to produce the noise the plaintiff complained of, and the uncontradicted evidence showed that if the voltage had been of such a magnitude, then service on the phone would have been interrupted. Since the uncontradicted evidence demonstrated that the service had not been interrupted, the court concluded that there had been no increase in voltage and therefore no evidence that an excessive noise had been emitted. The court said:

"The business of the defendant is to carry speech and sound over the wire by means of electricity and the function of the telephone is to transmit sounds. . . . (I)t is clear that (the plaintiff's) statement that the noise was due to faulty equipment or operation is inconsistent with facts clearly established. If the noise was produced by the current of electricity in the telephone apparatus, such a loud noise could not have been produced as plaintiff claims without an immediate and continued interruption of the service over that telephone line. The noise was of the same intensity at both ends of the line. But (the other party to the call) suffered no injury or serious inconvenience." *Id.,* at 15–16.

Thus, *Katz* holds that the plaintiff failed to prove that an excessive sound had been transmitted through her telephone. However, in dictum, the court stated that even if the plaintiff had demonstrated that the noise had been excessive, unusual and improper, there was no evidence to place the responsibility on the defendant. The court noted that the company produced evidence showing that its equipment did not produce the noise. The court hypothesized that since both phones involved were party lines, the noise might have been caused by a receiver being off the hook at any residence having in the party lines. Since there was no showing that the defendant's negligence created the noise, the court concluded that

the res ipsa doctrine would not have applied even if the plaintiff had proved that a loud noise had occurred. We are not persuaded by the dicta in *Katz* for two reasons. First, although it is not completely clear from the opinion, the court seemed to have made a different approach to the res ipsa doctrine than Missouri courts. It appears that the Rhode Island court was of the view that evidence produced by the defendant can prevent the plaintiff's case from going to the jury.[6] That does not appear to be the rule in Missouri. In Missouri, if the plaintiff produces a prima facie case under the res ipsa loquitur doctrine, he is entitled to go to the jury with it, even if the defendant's evidence is unimpeached or uncontradicted. *Robinson v. Southwestern Bell Telephone,* supra. See also *Clark v. Linwood Hotel, Inc.,* supra, where the court said, 291 S.W.2d at 105: "A prima facie showing of negligence under that doctrine raises a substantial factual inference of defendant's negligence which amounts to evidence, as distinguished from a mere procedural presumption, that does not disappear upon the submission of evidence tending to exculpate defendant, but remains in the case as evidence sufficient to support an affirmative finding for plaintiff." Second, in its dicta, the court in *Katz* focuses on who was responsible for *creating* the noise rather than focusing on whether the defendant was negligent in permitting the transmission of such noise through the plaintiff's telephone receiver. As we stated earlier, focus should be on the latter. Therefore, to whatever extent the *Katz* decision stands for the proposition that occurrence of an excessive sound through a telephone receiver cannot support an inference of negligence on the part of the telephone company we are constrained to disagree with it.[7]

To further support its contention that negligence cannot be inferred from the occurrence of a loud noise in a telephone receiver, the defendant cites several cases for the proposition that since the telephone is designed to produce sound, the fact that an excessive sound was emitted cannot give rise to an inference of negligence and therefore the res ipsa doctrine is inapplicable. We have read the cases cited by the defend-

---

**6.** The court placed great weight on the defendant's evidence that it had not produced the noise. The court also emphasized that the medical evidence produced at trial showed that the plaintiff suffered from hysteria and that the medical testimony was almost conclusive in showing that the complaints of the plaintiff arose from her physical condition as opposed to any injury received from use of the telephone.

**7.** The defendant also relies on *Gallaher v. Waynesboro Mut. Telephone Co.,* 143 Va. 383, 130 S.E. 232 (1925), to support its position that the occurrence of an excessive noise through a telephone receiver is not such an occurrence as would happen only if those in charge failed to exercise due care. We do not believe that *Gallaher* supports the defendant's position. In that case the plaintiff alleged that he was injured by a loud noise while using the telephone. The trial court sustained the defendant's demurrer to the plaintiff's evidence and this ruling was affirmed on appeal. From the evidence it appeared that the plaintiff resided in a rural area outside the city limits of Waynesboro. The telephone lines outside the city limits were owned and controlled by the farmers living in the rural areas. The privately owned lines connected with the defendant's at the city limits. The evidence also established that the sole cause of the noise was the close proximity of an electrical line to the telephone line out in the rural area and that the defendant had nothing to do with either of the two lines involved. The court found that res ipsa could not be applied because the defective instrumentality which caused the injury was neither managed, operated, owned nor controlled by the defendant. *Id.,* at 233. The court also emphasized that the defendant had provided its customers with every known device designed to protect against dangerous currents of electricity and the state of the art was such that it was not possible to install any device that would eliminate excess noise. It should therefore be remembered that *Gallaher* was decided in 1925. *Gallaher* merely holds that the doctrine cannot be applied to the facts in that case because the instrumentalities that caused the injury were not in the control or management of the defendant (the second element of a prima facie res ipsa case). It does not hold that the occurrence of an excessive noise over telephone lines is such an occurrence that will not happen unless those in charge failed to exercise due care. Thus, *Gallaher* does not lend support to the defendant in its contention that negligence cannot be inferred from the fact that a person using a telephone experienced acoustical trauma.

ant and find that they do not support the defendant's theory.

### III

Having determined that the res ipsa doctrine can be utilized by a plaintiff who alleges to have suffered acoustical trauma when speaking on the telephone, we now turn to the defendant's third point on appeal—that the plaintiff failed to make a submissible case on the issues of negligence and causation. To determine whether the plaintiff has made a submissible case, this court must view the evidence in the light most favorable to plaintiff and give him the benefit of all inferences which may be reasonably drawn from the evidence supporting his cause of action. We disregard the defendant's evidence, except as it aids the plaintiff's case. *Smith v. Allied Supermarkets, Inc.,* 524 S.W.2d 848 (Mo. banc 1975); *Tri-Continental Leasing Co. v. Neidhardt,* 540 S.W.2d 210 (Mo.App.1976); *Oventrop v. Bi-State Development Agency,* 521 S.W.2d 488 (Mo.App.1975).

The defendant first contends that the plaintiff failed to establish the second element of a prima facie case—that at the time of the loud sound the defendant controlled and managed the hand receiver of the plaintiff's telephone as well as the sound input into the receiver. As stated in discussing defendant's second point on appeal, one essential element of a res ipsa case is that instrumentality causing the injury was under the management and control of the defendant. *Niman v. Plaza House, Inc.,* 471 S.W.2d 207 (Mo. banc 1971); *Furlong v. Stokes,* supra; *Willis v. Terminal R.R. Assoc.,* supra; *Walsh v. Phillips,* supra; *Long v. Spanish Lake Service, Inc.* supra. The control element is essential, because it ties the defendant to the occurrence that would not ordinarily happen if those in charge exercised due care. Merely demonstrating that an incident occurred is not enough. The plaintiff must also show that it was the defendant who controlled the instrumentality causing the injury, for this permits the inference to be drawn that it was the defendant who was negligent. *Niman v. Pla-*

*za House, Inc.,* supra; *Maybach v. Falstaff Brewing Corp.,* supra; *Brown v. St. Louis County Gas Co.,* supra.

The defendant argues that since the undisputed evidence shows that the plaintiff had physical possession over the telephone receiver when the incident occurred, it cannot be said that the defendant had exclusive control over the instrumentality causing the injury. We find that this contention is without merit. Exclusive control has been defined by Missouri courts as not necessarily meaning physical control, but refers to the right of such control. *Smith v. Wabash R. Co.,* 416 S.W.2d 85 (Mo. banc 1967); *Walsh v. Phillips* supra; *Parlow v. Carson-Union-May-Stern Co.,* 310 S.W.2d 877 (Mo.1958).

Initially, it was stipulated between parties that defendant was the owner of the system installed in plaintiff's home, including the lines, telephone protection, wires and telephone receivers and that it exercised control of the system to the point where the telephone wire entered plaintiff's home. Additionally, plaintiff testified that defendant installed the telephone unit in plaintiff's house and that he had nothing to do with any of the unit mechanism. While defendant entreats us to find that plaintiff's physical possession of the telephone destroys the res ipsa case, we cannot do so. The plaintiff was using the telephone in the usual and normal manner as intended by defendant when the unit was placed by the defendant in plaintiff's home. There is no contention that the telephone unit was used improperly by plaintiff. The fact that the plaintiff had possession of the unit within the house does not prevent a finding that the instrumentality (the unit) that caused the injury or through which the injury was caused was controlled and managed by defendant. Plaintiff did not, in fact, have control of the telephone mechanism or its workings. Clearly the mechanical forces of the phone were in control of the defendant and the telephone was merely being used in the usual and normal manner. We find that the defendant had the requisite control over the receiver of plaintiff's telephone.

*Niman v. Plaza House, Inc.,* supra; *Parlow v. Carson-Union-May-Stern Co.,* supra; *Clark v. Lindwood Hotel, Inc.,* supra; *Warren v. Missouri and Kansas Telephone Co.,* supra; *Robinson v. Southwestern Bell Telephone Co., Inc.* supra; *Joyce v. Missouri and Kansas Telephone Co.,* supra; *Gandy v. Southwestern Bell Telephone Co.,* supra.[8]

Defendant's reliance on *Brown v. St. Louis County Gas Co.,* supra, is not persuasive, for in *Brown* the instrumentality involved was owned by the plaintiff and in her exclusive control. Not so here.

Defendant also argues that it did not have control of the sound input over the telephone, but such argument is misplaced. The defendant focuses on the creation of the noise over which, it argues, it had no control. But the correct focus in this case is on the inference of negligence to be drawn from the fact that the loud noise, however created, passed through the telephone receiver due to an apparent failure of the sound protective devices. As we have already stated, the defendant has a duty to use the highest degree of care practical to keep its telephones and apparatus used therewith safe or so as to be used with safety. *Warren v. Missouri & Kansas Telephone Co.,* supra; *Gandy v. Southwestern Bell Telephone Co.,* supra. We have also

stated earlier that the occurrence of a loud noise over the telephone lines injuring a person holding the receiver will permit the jury under the res ipsa loquitur doctrine to draw the inference that the defendant breached such duty and was thereby negligent. There is no dispute that the defendant managed and controlled the various protective devices designed to prevent excessive noises from passing through the telephone receiver. Thus, even if a third party were negligent in creating the noise that caused the plaintiff's injury, this would have no impact on the defendant's negligence in permitting excessive sound to pass through the telephone system and into the plaintiff's telephone receiver.[9] Therefore, under the facts of this case, the plaintiff did not have to prove that the defendant controlled the source of the sound in order to make a submissible res ipsa loquitur case, and thus, the defendant's contention is without merit.

The defendant further contends that the plaintiff failed to produce substantial evidence that the defendant possessed superior knowledge or the means of acquiring knowledge as to the cause of the occurrence. We agree with the defendant that this is an element of a prima facie res ipsa loquitur case.[10] *Furlong v. Stokes,* supra;

**8.** The res ipsa loquitur doctrine was held to apply in each of the cited cases even though the plaintiff was not physically possessing or making use of the mechanical instrument involved. But the basic control of the mechanism remained in the defendant and was being used by plaintiff as intended.

**9.** The defendant relies on *Katz v. New England Telephone & Telegraph Co.,* supra, to support its position that the control requirement of the res ipsa doctrine cannot be satisfied unless the plaintiff can show that the defendant controlled the source of the sound. *Katz,* which we have discussed in detail in the defendant's second point on appeal, held that res ipsa doctrine could not be applied to that particular case because the evidence would not support the conclusion that an excessive noise occurred. The court went on to say in dicta, upon which the defendant relies, that even if it were to assume that an excessive noise had occurred, there was no evidence to place responsibility upon the defendant. The court noted that a party line was involved and the noise may have been created by someone leaving the receiver

off the hook. It should be noted that the *Katz* case was decided in 1929 and that the court did not apparently impose upon the telephone company the duty to use the highest degree of care to prevent excessive noise from passing through their phone lines. As was said earlier, we believe that the rationale employed by the Texas court in *Gandy v. Southwestern Bell* is more in harmony with Missouri cases. In *Gandy,* a party line was also involved and there was some evidence indicating that a third party may have slammed down his receiver causing the noise in question. This did not prevent the plaintiff from making a submissible res ipsa case. The Court said: "From all of this testimony, the fact of a party line and even that a third party slammed down a receiver, does not excuse defendant from its duty to control excessive sound which its lines emit." *Id.,* 341 S.W.2d at 557.

**10.** Prosser, in discussing this element of the res ipsa doctrine says: "It is difficult to believe that this factor ever can be controlling, or more than at best a makeweight." Prosser, Law of Torts, 4th ed. 1971 at 225.

*Willis v. Terminal R.R. Assoc.* supra; *Walsh v. Phillips,* supra; *Long v. Spanish Lake Service, Inc.,* supra. "The doctrine of res ipsa loquitur serves as an aid to the injured party who does not know and cannot plead or adduce proof showing the specific cause of the injury. . . . (W)here the plaintiff's evidence does not clearly show the cause of the accident or where the cause is in doubt, the plaintiff may invoke the res ipsa doctrine." *LoBello v. Laclede Gas Co.,* supra, 517 S.W.2d at 477. Although the superior knowledge requirement was never specifically dealt with in those electrical shock and acoustical trauma telephone cases that held that the res ipsa loquitur doctrine was applicable, it must be said that in finding that a submissible res ipsa case had been made, these cases recognized that the telephone company possessed superior knowledge, or the means of acquiring superior knowledge of the cause of the occurrence. See *Robinson v. Southwestern Bell Telephone,* supra; *Joyce v. Missouri & Kansas Telephone Co.,* supra; *Warren v. Missouri & Kansas Telephone Co.,* supra; *Scott v. Diamond State Telephone Co.,* supra; *Gandy v. Southwestern Bell Telephone Co.,* supra. The facts relevant to the question of whether the defendant telephone company had superior knowledge or the means to acquire knowledge of the cause of the occurrence in the case before us are similar to those in the cases cited, and therefore we find that the plaintiff has satisfied this element of his cause of action. In those cases that held that the doctrine could not be applied to acoustic trauma fact patterns, the superior knowledge requirement was not discussed. See *Katz v. New England Telephone & Telegraph Co.,* supra; *Gallaher v. Waynesboro Mut. Telephone Co.,* supra.

In its final attack on the sufficiency of plaintiff's evidence, defendant argues that the plaintiff failed to produce substantial evidence to establish any proximate causal relationship between the accident and plaintiff's hearing difficulty. Plaintiff's medical expert testified that as a result of the initial trauma from the telephone, plaintiff suffered a hearing loss and that there was "a direct causal relationship between the acoustical trauma and his hearing loss." Plaintiff also testified as to his hearing difficulty after the incident including a buzzing, headache and earache and loss of sound direction. We believe the causation element was adequately fulfilled by the complementary testimony of the exert medical witness and plaintiff. See *Harrison v. Weller,* 423 S.W.2d 226 (Mo.App. 1967).

Summarizing plaintiff's evidence which we believe sufficient for a jury to find liability against defendant are the following facts: 1) plaintiff heard a loud noise (the telephone "bit" him; it was like being hit on the ear, hard); 2) that some sort of acoustical disturbance passed through the telephone into plaintiff's ear was corroborated by plaintiff's wife (she noticed the dazed look and heard a popping and cracking in the receiver after she picked it up) and by Mrs. Johnson ("kinda like lightning and thunder"); 3) defendant's own expert conceding that if what plaintiff and his corroborating witnesses stated was the truth, then defendant's noise protective devices had malfunctioned; 4) defendant's wire chief Richardson's acknowledgement that a power surge, apparently unchecked by the sound protection devices, could have caused the noise; 5) defendant's control of the telephone system and its devices; 6) the resultant injury to plaintiff.

Therefore, in this case we have considerably more than plaintiff's unsupported and unsubstantiated statement that he heard a noise over the telephone; there are several additional factors which permit the doctrine of res ipsa loquitur to apply. But we are also fully mindful that a promiscuous application of res ipsa to every so called noise over the telephone can lead to mighty abuses and that we should indeed be circumspect in applying the doctrine in telephone acoustical trauma cases. We have not held that every crackle, ping, pop or other noise heard over the telephone is sufficient to

bring the cause within the doctrine. We have not held that every subjective complaint about a "noise" on the telephone brings the case within the doctrine and is sufficient to establish an inference of negligence. Obviously, it is necessary to give thoughtful and careful consideration to the facts of each particular case where application of res ipsa is sought on a complaint for telephone acoustical trauma.

## IV

In its fourth point, the defendant attacks the plaintiff's verdict directing Instruction No. 2. That instruction reads:

"Your verdict must be for plaintiff if you believe First, defendant Southwestern Bell Telephone Company was the operator of the telephone system, and

Second, the telephone receiver made a sudden loud noise, and

Third, such loud noise was the direct result of negligence of defendant, Southwestern Bell Telephone Company, and

Fourth, as a direct result of such negligence the plaintiff sustained damage."

The defendant first contends that since the res ipsa loquitur doctrine is inapplicable to this case, the instruction should not have been given. Having resolved this question against the defendant earlier in this opinion, there is no need to reiterate why the doctrine is applicable.

■ The defendant also claims that the phrase "operator of the telephone system" is an improper modification of MAI 31.02(2) in that it fails to properly submit the control requirement of the res ipsa loquitur doctrine. The defendant contends that "operator of the telephone system" is too broad in that it is not limited to the instrumentalities involved, and that the proper hypothesis of control would have been a requirement that the defendant controlled the sound input into the plaintiff's telephone

receiver. There is no dispute that there is no MAI instruction to fit the facts of this case and therefore a modification was necessary. When modifying an MAI instruction, Rule 70.01(e) controls:

"Where an MAI must be modified to fairly submit the issues in a particular case, or where there is no applicable MAI so that an instruction not in MAI must be given, then such modifications or such instructions shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts."

In testing the legal sufficiency of instructions, a court "should not be hypertechnical in requiring grammatical perfection, the use of certain words or phrases, or any particular arrangement or form of language, but * * * should be concerned with the meaning of the instruction * * to a jury of ordinarily intelligent laymen." *Bartleman v. Humphrey,* 441 S.W.2d 335, 348 (Mo.1969); *Tietjens v. General Motors Corp.,* 418 S.W.2d 75, 86 (Mo.1967); *Snyder v. Chicago, Rock Island & Pacific R.R. Co.,* 521 S.W.2d 161, 164 (Mo.App.1973). While we agree with the defendant that the phrase "defendant . . . was the operator of the telephone system" is a broad formulation of the control requirement,[11] we believe that when the first paragraph is read in conjunction with the remaining paragraphs of the instruction, a jury of ordinarily intelligent laymen, in determining that the defendant was liable, would have to find that in controlling the telephone system, the defendant controlled the plaintiff's telephone and controlled the protective devices connected to it. Paragraph Second of the plaintiff's verdict director focuses on the telephone receiver. It was stipulated that this telephone was owned and installed by the defendant. We believe that a jury of ordinarily intelligent laymen, having heard the evidence, could only read

11. It would appear that the plaintiff when modifying the first paragraph of MAI 31.02(2), substituted "telephone system" for the term "bus." "Bus" as used in the model instruction is the specific instrumentality that caused the injury akin to the telephone receiver and protector systems involved in the case before us. Although the "telephone system" includes the specific telephone involved and its protective devices, the term is broader than that used to describe the instrumentality in the first paragraph of MAI 31.02(2).

the term "telephone system" used in paragraph First as referring to and including the telephone system in the plaintiff's residence. Although the instruction could have been made more specific by including in paragraph First reference to the management and control of the specific telephone and its protective devices we believe that no error was committed in submitting paragraph First. Furthermore, if the defendant were of the view that no MAI form was applicable, and that the instruction offered by the plaintiff was too general, it was the defendant's duty to offer a more specific instruction. *Boten v. Brecklein*, 452 S.W.2d 86 (Mo.1970).

■ The defendant next attacks the second paragraph of the plaintiff's verdict-directing instruction which reads: "Second, the telephone receiver made a sudden, loud noise." The defendant contends that there was no evidence to show that a noise had been emitted and therefore no evidence to support this submission. In our discussion of the defendant's third point we found that there was sufficient evidence to show that a noise had been emitted and therefore we rule against the defendant on this point.

The defendant further attacks the second paragraph, as well as the third paragraph of the instruction claiming that there was no evidence to show that the sound was "loud" and, furthermore, that the word "loud" is a relative term that gives the jury free rein in determining whether the defendant was negligent. We have already noted plaintiff's testimony that the telephone "bit me," "hit me open handed across the ear, hard," Mrs. Johnson's testimony of lightening and thunder, and plaintiff's wife's testimony of "cracking and popping." We believe that such evidence was sufficient to show that the plaintiff heard a "loud noise." We now consider whether the

use of the word "loud" in the instruction gave the jury free rein to determine negligence as the defendant claims. "It is the general rule that 'words of common usage which are generally understood, when used in a charge to the jury, need not be defined in the absence of a request . . . and not always when requested.' " *S. P. Personnel Associates v. Hospital Building & Equipment Co., Inc.*, 525 S.W.2d 345, 350 (Mo.App.1975). See also *State v. Goodman*, 490 S.W.2d 86 (Mo.1973); *Burns v. Vesto Co., Inc.*, 295 S.W.2d 576 (Mo.App.1956). We believe that "loud" is a commonly understood word defined as "marked by intensity or volume of sound" in Webster's Third New International Dictionary, unabridged, (1961) and that it was not error to use the term to describe the noise.[12] A cursory examination of the instructions contained in the MAI reveals that instructions containing relative adjectives have been approved. See for example MAI 17.02 where the term "speed" is modified by the adjective "excessive." Both "excessive" and "loud" are relative terms not subject to a precise, objective definition. They are both words of common usage and meaning, and it is for the jury to determine whether or not something was "excessive" or "loud" under the facts of the particular case. We therefore hold that no error was committed in including the term "loud" in the plaintiff's verdict director.

Having found that the plaintiff's verdict directing instruction was supported by substantial evidence and that the modification, while possibly inartfully phrased, was not improper, we conclude that no error was committed in the trial court's submitting the instruction to the jury.

■ The defendant also contends that the plaintiff was not entitled to have his case submitted under a general negligence

---

12. If the plaintiff had not included an adjective to describe the noise in the verdict directing instruction, it would seem that the defendant would then be heard to complain that the instruction was defective for not describing the kind of noise produced. The defendant would argue that by not describing the noise, the jury would have been permitted to find the defendant liable if any degree of sound were produced. The defendant would not be negligent if the sound produced by the telephone were within ordinary limits, it would appear necessary for the plaintiff to describe the sound more specifically in his verdict director. We find that this was accomplished by inclusion of the word "loud."

theory due to the fact that through one of his own witnesses, Robert Bayles, the plaintiff introduced evidence of specific negligence. The defendant points to Bayles' testimony as a rebuttal witness for the plaintiff that in his opinion the plaintiff had not been afforded complete protection from excessive noise due to the defendant's rendering inoperative certain 7-amp fuses. The defendant claims that this is evidence of specific negligence.

> "(W)here specific negligence, the real or precise cause, is shown definitely by direct evidence there is no room for the presumption or inference which the res ipsa rule affords. The plaintiff is bound by his evidence in a res ipsa case just as he is in an ordinary negligence action and cannot in effect say to the jury, 'I have shown you exactly how this collision occurred but you are, nevertheless, still at liberty to speculate and presume that it may have happened some other way.'" *Rea v. St. Louis-San Francisco Ry. Co.*, 411 S.W.2d 96, 99 (Mo.1967). See also *LoBello v. Laclede Gas Co.*, supra; *Duncker v. St. Louis Public Service Co.*, 241 S.W.2d 64 (Mo.App.1951).

However, although the plaintiff's evidence may tend to show the specific cause of the accident, he will nevertheless not lose the benefit of the res ipsa doctrine if after his evidence is complete, the true cause is still left in doubt or is not clearly shown. *Stevens v. Missouri Pacific R.R. Co.*, 355 S.W.2d 122 (Mo.1962); *Collins v. Nelson*, 410 S.W.2d 570 (Mo.App.1965). Thus, we must determine whether the testimony of Robert Bayles constitutes "such a clear and definite showing of what actually happened, or so clearly etch and outline the precise and specific act of negligence that caused plaintiff's injuries, as to exclude all doubt as to the true cause of the occurrence." *Stevens v. Missouri Pacific R.R. Co.*, supra, 355 S.W.2d at 130. After a review of Bayles' testimony, we find that it does not exclude all doubt as to the true cause of the occurrence. While there was

some reference to specific negligence in Bayles' direct testimony, on cross-examination such testimony was positively established to be inaccurate, and the specific negligence completely vitiated. Having reviewed Bayles' testimony it cannot be said that plaintiff had definitely shown the real and precise cause of his injury. Thus, he should not be deprived of the use of the res ipsa doctrine.

## V

■ In its fifth point on appeal, the defendant contends that the trial court erred in submitting Instruction No. 6, the damage instruction, to the jury. Instruction No. 6, which is MAI 4.01, reads:

> "If you find the issues in favor of the plaintiff, then you must award the plaintiff such sum as you believe will fairly and justly compensate the plaintiff for any damages you believe he sustained [and is reasonably certain to sustain in the future] as a direct result of the occurrence mentioned in the evidence."

The defendant claims that it was erroneous to refer to future damages in the instruction since there was no evidence to support the plaintiff's claim that his injuries were permanent. It is axiomatic that submissions to the jury must be supported by substantial evidence. *Kramer v. May Lumber Co.*, 432 S.W.2d 617 (Mo.App.1968); *Settell v. Horgan*, 362 S.W.2d 769 (Mo.App. 1962). See also MAI 4.01 Notes on Use. Furthermore, the burden is on the plaintiff to show the permanency of his injuries.[13] *Yates v. Bradley*, 396 S.W.2d 735 (Mo.App. 1965); *Heibel v. Robison*, 316 S.W.2d 238 (Mo.App.1958).

The plaintiff has two complaints which he claims are permanent. The first is a buzzing in his left ear, diagnosed as tinnitus, which he testified he has had continually since the telephone incident. He stated that there was no medication available to stop the buzzing. The other complaint deals with hearing problems in his left ear.

---

13. Of course, it is not essential for a plaintiff to prove permanent injury to recover for future damages. Future damages and permanent damages are not synonymous terms. *Gaynor v. Horwitz*, 464 S.W.2d 537 (Mo.App.1971).

**174**

He testified that he cannot hear as well since the incident, and had never noticed any problems with his hearing before the injury. He also related problems he had discerning sound location. Plaintiff's medical witness testified:

"Q. . . . Do you have an opinion, based upon a reasonable degree of medical certainty, as to whether or not this tinnitus, this buzzing in the ear, is a permanent condition?

A. Yes, I do. I feel it probably will be permanent."

It is questionable whether the doctor's response satisfies the requirement that permanent injury be shown with reasonable certainty, as he uses the term "probably." However, the physician's other testimony concerning the permanency of the plaintiff's hearing loss does satisfy the reasonable certainty requirement. Plaintiff's doctor diagnosed the plaintiff's hearing condition as a mild to moderate sensory neuro hearing loss in the speech frequency range and positively stated that the condition was permanent and that there was no generally accepted course of curative treatment. We believe that through his own testimony concerning his hearing difficulties, and through that of his medical witness, the plaintiff did produce sufficient evidence to justify including future damages in Instruction No. 6. See *Goins v. O'Keefe*, 412 S.W.2d 513 (Mo.App.1967). We therefore hold that no error was committed in submitting the damage instruction to the jury.

### VI

■ Defendant argues that the trial court erred in permitting plaintiff's counsel in closing argument to comment on the size of defendant corporation and its responsibility to the public. The trial court has wide discretion in controlling argument of counsel and we defer to the judgment of the trial court, finding no error. *Burian v. Dickens*, 527 S.W.2d 26 (Mo.App.1975);

14. Plaintiff's reference to defendant as "big insurance company" was held not to be prejudicial as a matter of law.

15. See *Worley v. Tucker Nevils, Inc.*, 503 S.W.2d 417 (Mo. banc 1973) and *Best v. Fred*

*Rohlfing v. State Farm Fire and Casualty Co.*, 349 S.W.2d 472 (Mo.App.1961).[14]

### VII

■ Finally, defendant asserts that the jury verdict of $10,000 was excessive. The jury is vested with broad discretion in fixing the amount of the award, and in determining whether a jury verdict is excessive we view the evidence in the light most favorable to the verdict. *Blond v. Overesch*, 527 S.W.2d 663 (Mo.App.1975). The appellate court will not interfere with the action of the jury unless the injustice of the size of the verdict is manifest. *Woodford v. Illinois Central Gulf R.R. Co.*, 518 S.W.2d 712 (Mo.App.1974). A review of the evidence shows that the plaintiff, who was 38 years old at the time of trial, suffered a permanent hearing impairment in his left ear and tinnitus, which is a permanent buzzing in the ear. Giving consideration to the requisite factors which govern our review of an excessive verdict issue as found in *Woodford v. Illinois Central Gulf R.R. Co.*, supra, *Young v. Jack Boring's Inc.*, 540 S.W.2d 887 (Mo.App.1976), and *Hodges v. Johnson*, 417 S.W.2d 685 (Mo.App.1967), and also considering the shrinking value of the dollar[15] and the broad jury discretion allowed, we cannot find the verdict in this case to be excessively munificent.

The judgment is affirmed.

KELLY, P. J., and SIMEONE, J., concur.

*Weber Construction Co.*, 525 S.W.2d 102 (Mo. App.1975).