Lillie Ruth GANDY, Appellant,

v.

SOUTHWESTERN BELL TELEPHONE COMPANY, Appellee.

No. 13663.

Court of Civil Appeals of Texas.

San Antonio.

Nov. 23, 1960.

Rehearing Denied Dec. 21, 1960.

------◆------

' Putman & Putman, Richard G. Strong, San Antonio, for appellant.

L. M. Bickett, San Antonio, Donald K. King, Dallas, for appellee.

POPE, Justice.

█ Lillie Ruth Gandy sued Southwestern Bell Telephone Company for injuries to her hearing caused by an explosive sound on the line while she was talking on defendant's telephone. Whether the court correctly ruled that there was no evidence is the point before us, and in such a case we must view the evidence most favorably in behalf of the plaintiff. White v. White, 141 Tex. 328, 172 S.W.2d 295.

Plaintiff pleaded negligence in general terms under res ipsa loquitur. After plaintiff introduced her evidence, the defendant moved for an instructed verdict which was overruled. Defendant introduced its evidence, renewed its motion, and it was again overruled. The jury found in favor of the plaintiff, (1) that defendant's phone emitted a loud noise while the earpiece was close to plaintiff's ear; (2) that plaintiff received an injury due to the loud noise; (3) that the noise was the result of defendant's negligence, and (4) the proximate cause of plaintiff's injuries. The jury could not agree on the amount of damages and was discharged. The defendant renewed its motion for judgment and it was granted.

█ The res ipsa loquitur doctrine is a rule of evidence. It means that "the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict." Sweeney v. Erving, 228 U.S. 233, 33 S.Ct. 416, 418, 57 L.Ed. 815; Gulf C. & S. F. Ry. Co. v. Dunman, Tex.Com.App., 27 S.W.2d 116, 72 A.L.R. 90. Under the doctrine, plaintiff need not prove specific negligence; but she must prove that defendant's negligence, generally alleged, is more probable than not. Honea v. Coca Cola Bottling Co., 143 Tex. 272, 183 S.W.2d 968, 971, 160 A.L.R. 1445. She may do this by circumstantial or inferential evidence.

An inference is more a matter of logic than one of law, for logic is concerned with the relation between the data of a fact, and the conclusion to be drawn from the data. Logic distinguishes good inferences from bad ones, and an inference is bad if it is based on data that it too weak, or if the conclusion is too remote. In other words, good logic will rule out the wild guess. However, good logic does not require inferences which absolutely demonstrate the claimed conclusion. In law, it is enough if the one who has the burden of proof can produce enough evidence to convince reasonable minds that the conclusion is more probable than not. Certain procedures

during a trial, post a judge in front of a jury to examine the evidence to see if there is anything for jurors at all. If there is only the wild guess or if the truth is conclusively demonstrated, the case is not one for a jury. In the exercise of judgment about the evidence, in such situations, the judge must test the evidence upon his own mind. His is a problem in logic to determine whether reasonable minds could reach the claimed conclusion. In testing the logic, he does not ask himself the rather subjective question: "Looking at the data, what conclusion do I as a thinking man reach with respect to the truth of the matter asserted?" Instead, he asks a more objective question: "Even though I, or some other reasonable person, if serving as a juror, would deny the claimed conclusion, is there evidence, including inferences, which would convince a reasonable person of the probable truth of the thing asserted?" If so, the matter is passed to the jury to decide; if not, the judge renders judgment. Woods v. Townsend, 144 Tex. 594, 192 S.W.2d 884.

Defendant points to the negligence issue as the one that has no support. It can not seriously contend that there is no evidence that the explosive noise actually occurred, nor that it occurred by transmission over mechanical instruments which were exclusively owned and controlled by the defendant, nor that the plaintiff sustained an injury to her ear. Both plaintiff and her sister, with whom she was talking, testified about their telephone conversation on the evening of September 12, 1956, when there was a loud clashing noise. Plaintiff testified that the noise "just busted in my ear," that she dropped the phone, was numb for over half an hour and could hear nothing. In a few minutes her hearing returned to her right ear but not her left ear. Her ear and head ached for two days. She stated that the phone was dead for about three hours, but she also stated that she phoned the Company and reported the incident that evening. She testified that she became partially deaf in her left ear, and medical evidence supported this proof. Plaintiff's sister described the noise as an explosion, like a blast in a rock quarry or gravel pit. She said she could not hear the same in both ears, and she was "shocked for a while." She stated that her phone also went dead and that her next-door neighbor reported the condition to the Telephone Company for her.

■ Defendant argues that the plaintiff failed to prove negligence because she failed to exclude an equally probable cause of the sound, and only proved enough to raise equal inferences. Davis v. Castile, Tex.Com.App., 257 S.W. 870, 872. Plaintiff was on a party line, and there was evidence, though not conclusive, that a third party may have slammed down his receiver causing the explosive noise. Defendant argues that the very purpose of the telephone is to transmit sound. This presents the inquiry, "What is the duty of the telephone company with respect to sound?" As in the case of the transmission of electricity, the utility is under a duty to use the known necessary devices and methods to prevent the passage of dangerous amounts. Southwestern Telegraph & Telephone Co. v. Davis, Tex.Civ.App., 156 S.W. 1146; Ischar v. West Texas Utilities, Tex.Civ. App., 54 S.W.2d 842; Texas Power & Light Co. v. Bristow, Tex.Civ.App., 213 S.W. 702; 18 Am.Jur., Electricity, § 110.

■ Sound may be measured in decibels, which is the measurement of the air pressure per centimeter. Eighty decibels of sound will not harm the human ear, one hundred twenty will cause discomfort, and one hundred forty will cause permanent injuries. The evidence shows that sound over a telephone line can be modified, amplified and controlled in several ways. To harness sound within safe limits, according to expert testimony, phones are equipped with a protector or barrier to high electrical pressures. The protector, in part, consists of two carbon blocks separated by a minute gap or safety valve at which electrical current drains off to the ground. If pressures

should still be too high, fuses in the circuit should automatically open. By use of a facsimile telephone arrangement defendant demonstrated that when electricity on a line built up to one hundred thirty volts, there was a flash of sparks at the gap, which left smut and pits on the carbon blocks. An expert also testified that there are safety devices inside the receiver which limit the sound from a receiver to eighty decibels. From all of this testimony, the fact of a party line and even that a third party slammed down a receiver, does not excuse the defendant from its duty to control excessive sound which its lines emit.

The jury could draw inferences of negligence from much of the evidence. The earpiece of the receiver was cracked. The repairman who worked on the phone early the next morning replaced the instrument. The instrument was about thirty years old and was apparently taken out of service and discarded. Defendant made explanation that plaintiff ordered a new color set, but the jury may have concluded that the instrument was no longer fit or safe for use. There was a rather extensive absence of records which defendant also explained, but which the jury may have discredited. Though the incident occurred and was reported on the night of September 12, 1956, when a record of reported trouble was made, and though the Company knew of the complaint of personal injuries three days later, according to one of plaintiff's witnesses, and at least by September 18, according to a written report of defendant's supervising repair foreman, and though the report stated that the noise "broke the receiver cap on Mrs. Gandy's telephone"; most of defendant's office records of the incident were discarded and the damaged instrument was lost. One witness testified that defendant's repair foreman told her, during September, 1956, that he had located the telephone and that there was something wrong with the receiver. The jury may have drawn inferences from defendant's failure to make inspections and tests upon the receiver and to produce it

for examination by plaintiff and the jury itself. Defendant's explanations of its operations were hypothetical, theoretical, by use of a facsimile, and were not applied to the instrument which Mrs. Gandy testified about.

■ There are few cases which involve personal injuries resulting from excessive sound over a telephone, but a telephone company is under a duty to maintain, inspect, to discover and repair defects. 52 Am.Jur., Telegraphs & Telephones, § 73. In Southwestern Telegraph & Telephone Co. v. Davis, Tex.Civ.App., 156 S.W. 1146, the Court recognized the duty of the utility to provide known devices for arresting current from electricity conducted over its lines. In Hanaman v. New York Telephone Co., 278 App.Div. 875, 104 N.Y.S.2d 315; Id., 303 N.Y. 1013, 101 N.E.2d 493, res ipsa loquitur was proved when the instrument itself bore physical signs of an excessive current. And in Seeley v. New York Tel. Co., 281 App.Div. 285, 120 N.Y.S.2d 262, 266, whether there was evidence was decided in these words:

"Substantially all of defendant's evidence came from the lips of its own regular employees and other interested witnesses. Certainly their credibility was for the jury. It produced none of the actual equipment involved but instead offered facsimiles. It offered no evidence to show any inspection of the major part of the line involved in the long distance telephone call. On the whole record therefore, we think the case was for the jury."

■ Defendant relies upon Katz v. New England Telephone & Telegraph Co., R.I., 145 A. 14, but in that case the Court held that the noise did not in fact occur. Here, however, two witnesses and a written report by defendant's employee testify that it did. In that case the Court was concerned with the original sources of sound. In this case, the evidence and inferences are enough to show that whatever the origin, maximum

sound was defectively controlled. Analogies may be found in Cain v. Southern Massachusetts Telephone Co., 219 Mass. 504, 107 N.E. 380; Joyce v. Missouri & Kansas Telephone Co., Mo.App., 211 S.W. 900; Shoemaker v. Mountain States Telephone & Telegraph Co., D.C., 17 F.Supp. 591; 33 A.L.R.2d 829, 831; 3 A.L.R.2d 1450, 1453.

There was evidence of negligence and the judgment is reversed and the cause remanded.