**James A. CASTOR, Petitioner,**

v.

**Captain T. J. MITCHELL et al.,
Respondents.**

**No. 2714.**

United States District Court,
W. D. North Carolina,
Charlotte Division.

Feb. 23, 1973.

George S. Daly, Jr., Casey & Daly, P. A., Charlotte, N. C., for petitioner.

Robert Morgan, Atty. Gen., and Jacob L. Safron, Asst. Atty. Gen., North Carolina Dept. of Justice, Raleigh, N. C., for respondents.

McMILLAN, District Judge.

PRELIMINARY STATEMENT

This case was heard in Charlotte on the merits of the plaintiff's complaints against prison officials. The plaintiff was present and testified, as did various witnesses for the defendants. The following are the essential facts.

## FINDINGS OF FACT

James Anthony Castor, age 29 or 30, in the spring of 1968 was convicted in the Superior Court of Nash County, North Carolina, of the crime of breaking and entering, and was sentenced to six to ten years in prison. (He has since been paroled.)

Prior to April 7, 1970, Castor had been confined in the Caledonia prison unit in Wake County. On April 7, 1970, he was transferred to the prison unit at Monroe, North Carolina. At Caledonia he had apparently been allowed to keep all his personal gear in his own cell. He arrived at the prison unit at Monroe with two pairs of regular shoes, one pair of shower shoes and some other personal gear.

When he arrived at the Monroe camp, Officer Griffin, one of the defendants, a prison guard, checked his personal belongings, told him he could only keep two pairs of shoes in his cell, and took the extra pair of regular shoes away. These shoes were tagged and put in the clothing room at the camp. Caster objected and evidently complained to Griffin that he was "confiscating" the shoes, which he ought not to do unless they were contraband. Griffin said that he "ran the show" and would take what he pleased.

A day or two later Castor drew a handwritten complaint to be filed in the Superior Court of Union County (Defendants' Exhibit 2), charging Officer Griffin and Captain T. J. Mitchell with "stealing" his shoes, and requesting that a warrant of arrest be issued and prosecution be started against Griffin and Mitchell. He gave the report to Captain Hayes, presumably to be mailed. [Prison officials typed up the complaint and later filed it without Castor's signature in the Superior Court of Union County at Monroe, North Carolina, on the 17th of April, 1970.]

Upon learning of Castor's complaint, Captain Mitchell, the commander of the camp, had Castor (and the shoes) brought before him on April 14, 1970.

Castor was introduced to Mitchell as "the Yankee son of a bitch that's causing the trouble." Castor denies that the shoes displayed to him were his shoes. The court finds that they were his shoes, or at least that the defendants so believed them to be and if they were not, that the defendants did have and did know where to find the correct shoes.

Castor refused to withdraw the assertion that the shoes had been stolen, and said that when Griffin took his shoes without permission or explanation that it amounted to stealing and still amounted to stealing, particularly since he (Castor) had formerly been permitted to keep the shoes at Caledonia.

This interview was considered by the defendants to be a hearing upon the "charge" of accusing Mitchell and Griffin of theft. A disciplinary report was prepared and filed, finding Castor guilty of violating prison regulations, Article 3:2–302(1), which reads:

"Directing toward any state official, any member of the prison staff or any member of the general public language that is generally considered profane, contemptuous, or threatening, or by a specific gesture or act demonstrating marked disdain, insolence, or impertinence with reference to such persons." [Plaintiff's Exhibit 2.]

The punishment ordered for this offense was three to thirty days of "disciplinary segregation," in a two-man cell six by eight feet in size, on a limited diet, and the loss of thirty days of statutory "good" time.

The plaintiff was taken, handcuffed, to Dr. Phifer, the prison camp doctor, for physical examination before he was put in disciplinary segregation. He says the doctor did not examine him but simply signed some papers saying that he was fit to endure the prescribed punishment. The defendant Griffin testified that there was an examination of Castor's heart and temperature and blood pressure, though no conversation, and that the examination took fifteen or

twenty minutes. Whatever the truth may be about the nature of the examination, Castor was obviously not pleased with the doctor.

Castor also complains of a second incident which happened on April 15th while the plaintiff was undergoing disciplinary segregation. Dr. Phifer came, as he did daily while Castor was in segregation, to check on him. He asked Castor if there was anything wrong with him. Castor, lying on a cot with his back to the door, did not answer or come to the door. Officer Rowell, who was with Dr. Phifer, told Castor to speak to the doctor, and Castor's indelicate response was, "Fuck the doctor."

That same day, April 15, Castor was brought before Captain Mitchell and was asked if the event had occurred. It was established that it had—Castor didn't and doesn't now deny it—and a sentence was immediately passed imposing an additional period of three to thirty days of disciplinary segregation and an additional loss of *ninety* days of "good" time.

Five days later the plaintiff withdrew his Union County lawsuit upon the representation by two of the prison officials that it would be better to withdraw it if he did not want to prolong his stay in segregation.

The disciplinary confinement included a bed check every thirty minutes or so around the clock. At night the guard would shine a light in the cell on these checks, and in that manner or verbally would frequently awaken Castor if he was asleep.

## CONCLUSIONS OF LAW

■■ The defendants put Castor in punitive segregation and otherwise punished him because he started a suit complaining of his prison treatment. This will not do. Free access of prisoners to courts can not be interrupted nor denied by prison authorities, nor may punishment be administered for it, nor may actions of the prisoner in defending his suit in discussions with the prison officials be made the excuse for punitive segregation. Ex Parte Hull, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941); Johnson v. Avery, 393 U.S. 483, 485, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); Sostre v. McGinnis, 442 F.2d 178 (2nd Cir. 1971); Coleman v. Peyton, 362 F.2d 905, 907 (4th Cir. 1966); Landman v. Royster, 333 F.Supp. 621 (E.D.Va.1971).

■ A prisoner does not forfeit rights to humane treatment and due process by conviction of crime. He forfeits his liberty and, if a felon, he forfeits some aspects of citizenship, but he does not forfeit his membership in the human race nor his protection against unconstitutional treatment. Punishment without a hearing is a violation of due process. Plaintiff was punished at least twice without due process, and on one of those occasions he did not have the semblance of a hearing. In view of Castor's discharge from confinement shortly after the hearing in this case, and in view of the adoption by the North Carolina Prison Department of a new set of procedural rules, plaintiff does not further request and the court does not make any order regarding the due process questions obviously raised upon the facts.

■ As to the claim of cruel and unusual punishment, based on the action of the guard in awaking Castor every thirty minutes or so night and day while he was in punitive segregation, that action comes under the heading of cruel and unusual punishment and should no longer be done by the defendants. Jackson v. Bishop, 404 F.2d 571 (8th Cir. 1968).

■■ Under pertinent decisions, including Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971), and cases cited, plaintiff's complaints were properly heard on the merits by this court rather than being relegated to the status of "matters within the exclusive expertise and jurisdiction of prison officials." Prison officials are encouraged to continue to make progress towards improvement of prison conditions. State courts, it is to be hoped, will join in such encouragement, but if a case comes to this court demonstrating

constitutional violations it is the duty of this court to face the issue rather than pass the issue back to a state court or a state prison administrator. Hayes v. Secretary of Department of Public Safety (Maryland), 455 F.2d 798 (4th Cir. 1972). Exhaustion of the plaintiff and of state remedies is not required under 42 U.S.C. § 1983.

### JUDGMENT

In the particulars outlined above, plaintiff's constitutional rights were violated. No actual monetary damages were shown. Defendants are ordered to pay plaintiff nominal damages of One Dollar ($1.00). After this suit was filed, defendants made substantial improvements in prison regulations and practices in the various matters discussed herein; the likelihood of repetition of the practices found unconstitutional in this lawsuit has been reduced, and injunctive relief appears unnecessary; no further orders are issued; defendants will pay the costs.