**INA OF TEXAS, Appellant,**

**v.**

**Jessie L. SMITH, Appellee.**

**No. 09–87–210–CV.**

Court of Appeals of Texas,
Beaumont.

Jan. 26, 1989.

Rehearing Denied Feb. 15, 1989.

Hollis Horton, Jo Ben Whittenburg, Beaumont, for appellant.

Timothy W. Ferguson, Port Arthur, Herschel L. Hobson, Beaumont, for appellee.

## OPINION

BROOKSHIRE, Justice.

Workers' Compensation case. This appeal sub judice follows a district court proceeding under the Texas Workers' Compensation Act, *TEX.REV.CIV.STAT.ANN. art. 8306, et seq.* (Vernon 1967 and Vernon Supp.1988). The claimant was Jessie L. Smith, who retired from Texaco, Inc., in 1981. Mr. Smith filed his claim for com-

pensation on or about January 13, 1986. In a juried proceeding the jury's verdict found a total loss of the use of Smith's hearing and the date of cumulative injury was found to be August 15, 1986. In calculating the judgment the district court employed a $217 per week compensation rate.

Smith's retirement date was May of 1981. He had started in the labor gang in 1941 using a jackhammer and "busting concrete" away from an old acid recovery unit that had burned down many years prior to 1941. He worked in the pipe department and labored in molding hot wax into a cold slab of cold wax. He was assigned to the Structural Steel Department using impact wrenches on the heads of big bolts and later to reworking exchangers. Smith generally wore hearing plugs beginning at sometime in the 1970's. He began having significant problems with his hearing loss around 1978.

Smith had several audiograms performed to measure his hearing acuity at Texaco facilities in 1971, 1973, and 1980. After the 1980 test the nurse told Smith that she believed that he had a hearing loss, but she did not tell Smith how much of a hearing loss he had suffered. Smith did not know what caused his hearing loss and no one at Texaco told him the cause. After October of 1980 he thought he had a hearing loss, not knowing its genesis. This paragraph narrates Smith's testimony on these events.

Smith speculated that the place that he had worked for over forty years and his exposure to noise there may have been related to his hearing loss. But it was a test in August of 1986 that caused Smith to realize, he said, that his loss of hearing was job related. Prior to that time, Smith testified that he didn't want to file a compensation claim based merely on suspicion. Smith took the position that prior to that time, Texaco employees had not told him that he had a loss of hearing. Smith did not miss any time from work as a result of any loss of hearing.

Smith's hearing never improved after he retired from Texaco. He claims it continued to get worse after his retirement. In 1986 his hearing loss amounted to 54%. Conflicting testimony and evidence as well as inconsistent testimony and evidence exist in the record concerning the narrative set out above, but we deem these matters were to be resolved by the jury.

The jury's verdict found that Mr. Smith had sustained and suffered a total and permanent loss of the use of his hearing in both ears which arose out of his work at Texaco. The jury found that August 15, 1986 was the date of the cumulative injury and the date of the first distinct manifestation of the loss of hearing. The verdict disclosed that the date of the last injurious exposure occurred on May 5, 1981, Smith's retirement date.

Smith had worked for four decades for his employer. Smith had an eighth grade education when he began to work for Texaco in 1941. During the next forty years on his job Smith's contention was that he was exposed to rather high levels of noise but he was given no hearing protection until sometime in the 1970's. Some evidence exists that Smith for the first time in 1986 entertained more than a suspicion that his loss of hearing was related to his work and arose out of his employment with Texaco. During that year, Smith was diagnosed as having suffered a moderately severe sensorineural hearing loss of about 54% and as having tinnitus. These hearing disorders were noise induced and due to his exposure to noise at his place of work according to a doctor of osteopathy.

*The Final, Binding Stipulation and
The Compensation Rate Issue*

■ There was a stipulation properly recorded before the trial judge agreeing that Mr. Smith qualified as a 210 day employee

for whatever date the jury shall have found as the first distinct manifestation of his hearing loss; and further, Mr. Smith's wages as to that year wherein the jury shall have found there exists the first distinct manifestation of hearing loss would qualify Smith for the application of the maximum compensation rate for that year.

Importantly, there was a later distinct modification and change in the stipulation which was agreed to by the parties. The attorney for the claimant said that *he fully understood the final stipulation.* The final form of the stipulation was that *for whatever year that Mr. Smith was an employee of Texaco, it was agreed and stipulated that he was a 210 day employee and that his wages as an employee* would qualify him for the application of the maximum compensation rate for *that year* of actual employment; that the year of the application of the maximum compensation rate would only include, and the parties' stipulation and agreement only included, the *days or the year ending on May 1, 1981.*

Although the stipulation could have been much more expertly worded, it appears that the stipulation simply did not apply to the years or days subsequent to May 1, 1981. And it is fair to state that that is certainly the understanding, not only announced in the record by the Appellee through his counsel, but also by the Appellee in his brief. Appellee at least tacitly concedes and acquiesces that there was no stipulation concerning the cumulative injury date. The cumulative injury date was defined in the charge as the date the disability was caused by exposure to noise.

The jury found the date of the cumulative injury to have been August 15, 1986. As we read the record, it is clear that the carrier admitted that *for any period of total incapacity the correct compensation rate was $133.00 per week* and $133.00 per week is ultimately that which the Appellee pleaded for and embraces in his brief. We find that the trial court actually based its final judgment as to the compensation rate upon the date of cumulative injury. Under this record, we find that the $133.00 rate is correct, because of the paramount Stipulation construed with the answers to the Request for Admissions.

Furthermore, the Appellee–Plaintiff affirmatively and unequivocally pleaded by his live, trial pleadings that on or about May 1, 1981, he was an employee of Texaco, Inc., and on the same said date of May 1, 1981, he sustained an injury to his hearing while in the course and scope of his employment due to repetitious trauma; that the claimant's last injurious exposure was on May 1, 1981; and that his compensation rate was $133.00. Plaintiff's last live pleading was his second amended original petition wherein he consistently and repeatedly pleaded that his compensation rate was $133.00 per week. When the Stipulation and Admissions are read together, the $133.00 figure is correct. The trial court erred in using the $217.00 per week compensation rate. The carrier's contention for a $37 rate betrays its own Stipulation and Admissions.

In Special Issue 3 the jury found that the date of cumulative injury occurred on August 15, 1986, and the trial court applied the maximum compensation rate for 1986 of $217.00 per week to Mr. Smith's claim. But the record glaringly establishes that Mr. Smith was not a 210 day employee during the year ending August 15, 1986. In fact, he was fully retired. Indeed, Smith had no shown wage earning capacity or wages during the year preceding August 15, 1986. Mr. Smith testified that he retired fully from Texaco *on May 5, 1981;* he was not working at the time of trial; there exists no evidence of probative value that Smith earned any wages during the twelve month period before August 15, 1986. In capsule form, the binding stipulation was that *for whatever year that Mr. Smith was an employee of Texaco,* INA of Texas stipulated that Smith was a 210 day employee and that his wages would qualify him for the maximum compensation rate for a year Smith was an employee.

The last, ultimate, paramount stipulation reads:

"MR. HORTON: I guess one caveat to the stipulation on the application of maxi-

mum rate would be that it would only include, our stipulation agreement only include for days before May 1st, any date before May 1st of 1981, which is the date he retired from Texaco. In other words, we're not stipulating that if the Jury finds some day of manifestation after May 1st of 1981 when he was not an employee of Texaco, that he was a 210–day employee or that the maximum compensation rate in a year for a year after May 1st of 1981 would apply to this claim.

"MR. FERGUSON: I understand."

Caveat is derived from the Latin and is translated: "Let him beware." BLACK'S LAW DICTIONARY 281 (rev. 4th ed. 1968). Through the discovery proceedings the compensation rate of $133.00 per week was firmly established and it applied to the year before May 1, 1981.

### The Question of Good Cause on the Filing of the Claim for Compensation

■ INA of Texas contends that Smith, as a matter of law, failed to timely file his claim for compensation and that Smith had no good cause for so failing to timely file his claim. We disagree. After reviewing and analyzing the record, we find that there is some evidence of probative force to support the finding of the jury that Smith had good cause for filing his compensation claim when he did. The record supports the jury's finding that Smith, while acting as an ordinarily prudent person under the same or similar circumstances, did not know that his hearing loss was work related nor did he know that it arose from his employment until so diagnosed by his own physician, one Dr. Herndon, a doctor of osteopathy. Furthermore, Smith swore that he relied upon the employees of Texaco—especially Texaco's nurses—to advise him if he had a hearing loss and if the loss was job related and arose from his employment.

The refused "sole cause" issues as submitted by the carrier on the "good cause" issue are definitely inferential rebuttal issues. The trial court properly refused all of the inferential rebuttal issues. *TEX.R. CIV.P. 277.*

### The Question of the "First Distinct Manifestation"

■ Next, INA argues that there exists no evidence or factually insufficient evidence to support the jury's answer to Special Issue No. 5. Alternatively, INA contends that the jury's answer to No. 5 is obviously against the greater weight and preponderance of the evidence. Omitting the predicate, Special Issue No. 5 reads:

"Find from a preponderance of the evidence the date of the first distinct manifestation of Jessie Smith's hearing loss.

"'FIRST DISTINCT MANIFESTATION' is defined as the time when the Plaintiff, as a reasonable person, recognizes the nature, seriousness, and work-related nature of the injury or disease.

"Answer by stating the month, date, and year.

"ANSWER: 8–15–86"

Again, we disagree. As submitted, and with the above definition we conclude that some evidence of probative value exists to sustain the jury's answer. *See Texas Employers Ins. Ass'n v. Fisher,* 667 S.W.2d 589 (Tex.App.—Beaumont 1984, no writ). A medical expert testified that the effects of the loudness of sounds or the length of sound and the duration of exposure to noise at work and the damaging effect thereof depends on a person's individual susceptibility to ear damage and to loss of hearing. Dr. Herndon also testified that Smith was more probably susceptible to noise damage than the average person. Smith was more noise sensitive. Significantly, the doctor stated that there are cases in the literature that when an individual employee is no longer exposed to loud noises, nevertheless, that individual's hearing loss can and does progress and become markedly worse. The doctor felt generally that *Smith's hearing loss was not related to his age. See generally Gill v. Transamerica Insurance Company,* 417 S.W.2d 720 (Tex.Civ.App.—Dallas 1967, no writ).

Hence, we overrule Appellant's points of error four and five; and by like reasoning

we overrule INA's point of error six which contends that there was no evidence or insufficient evidence to support the jury's finding that Jessie Smith had an occupational disease of hearing loss. The somewhat lengthy record, itself, manifestly overrules this contention.

### The Form of the Special Issues Submitting the Good Cause Issue

■ INA argues that the special issues inquiring as to the good cause question are merely evidentiary and not ultimate issues. We disagree. The issues submitted were in substantial conformity with the wording of the issues approved in 2 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 24.02 (1970). *TEX.REV. CIV.STAT.ANN. art. 8306, sec. 20* (Vernon Supp.1989), in relevant part, substantially provides that an occupational disease shall include damage or harm to the physical structure of the body occurring as a result of repetitious physical traumatic activities extending over a period of time and arising in the course of employment and that the date of cumulative injury shall be the date disability was caused thereby. Furthermore, the jury made a determination and finding that Smith filed his claim within six months of the date of the cumulative injury which was the proper beginning date triggering the running of the filing period. Also, the jury made a determination that Smith filed his claim within six months of the date of the first distinct manifestation. Indeed, the *TEX.REV.CIV.STAT.ANN. art. 8307, sec. 4a* (Vernon Supp.1989), in relevant part, substantially provides that a claim for compensation shall be made within one year after the first distinct manifestation of an occupational disease. As we construe Article 8307, sec. 4a, the claim for compensation based on occupational disease was timely filed.

Then INA has a series of points of error averring that the trial court erred in failing to submit a requested issue which inquired whether the sole cause of Smith's failure to timely file his claim was that *he did not know that a work-related hearing loss was compensable;* that the court erred in refusing the carrier's requested Special Issues No. 2, 3, and 4 constituting a cluster of issues on the "good cause" question. These refused issues were but shades or phases or duplicates of the submitted issues.

The court committed no error in entering a judgment for Smith based on a date of cumulative injury of August 15, 1986, even though INA argues that, as a matter of law, the date of cumulative injury necessarily was on or before August 2, 1971. We do not agree. INA's contention of August 2, 1971 is not sound. Under this record we overrule INA's points of error numbers eight, nine and ten.

In point of error thirteen, the carrier contends the trial court erred in failing to submit its requested instruction and definition of sole cause. This refusal was proper since the instruction and definition were based on inferential rebuttal issues which were and are disallowed. Point of error thirteen is overruled.

### The Issue of the Trial Court Having Awarded 160 Weeks of Compensation Benefits

■ *TEX.REV.CIV.STAT.ANN. art. 8306, sec. 12,* (Vernon Supp.1989), provides for specific, scheduled injuries. This statute provides for the maximum weeks of compensation for specific scheduled injuries. It provides:

> "For the complete and permanent loss of the hearing in both ears, sixty-six and two-thirds per cent (66⅔%) of the average weekly wages during *one hundred and fifty (150) weeks.*" (Emphasis added).

We must conclude that the trial court made a mathematical miscalculation in awarding compensation for one hundred and sixty (160) weeks. This was error and the judgment is reformed to provide for one hundred and fifty (150) weeks compensation.

■ We also conclude it was not error under this nonconclusive record to award to the plaintiff's lawyers $900.00 to pay the fee for Dr. Boyd Herndon as set out in the judgment. This payment was previously voluntarily made to the doctor by the claimant's attorneys. *TEX.R.CIV.EVID. 501* provides generally that no person has the privilege to refuse to be a witness. *TEX.*

*R.CIV.P. 176* provides that a witness may be subpoenaed to trial. Dr. Herndon was a subpoenaed witness. In connection with the $900.00 awarded in the judgment which had been paid to Dr. Herndon, the Appellee in his brief makes the following indictment against INA and its trial lawyer. We quote from Appellee's brief:

> "In order to *maintain good standing with a medical doctor who treats injured clients of Appellee's law firm, subsequent to the trial, Dr. Herndon was paid a sum in excess of $2,000.00 specifically for his lost appointments.* Judge Sanderson ruled that worker Smith could recover $900.00 of that expense. Even before final judgment, it was the *specific understanding and agreement between attorney Ferguson and attorney Horton for INA that the $900.00 lost business fee would be acceptable to INA.* Admittedly, this *specific* agreement was not put in the record *only* because of an evidently mistaken belief that INA, through their attorney, *would follow up on their word."* (Emphasis partly in the brief and partly supplied)

We are not in a position, of course, to pass upon the truth or accuracy of this statement. We have here a professional person, being a doctor of osteopathy. It is certainly customary that when medical experts, either doctors of medicine or doctors of osteopathy, are called to the stand to give, among other things, their professional medical opinions, they are entitled to a reasonable fee as an expert witness. We think that Dr. Herndon qualifies under this rule. There are some problems with this point. The record is cloudy. In fact, at several pertinent places, the record shows that there was an off-the-record discussion, usually in the judge's chambers. We do not have the benefit of what was said or done, agreed to or not agreed to. However, from the record, we think it is fair to make these observations: the rule requiring witnesses to appear does not give either litigant, or their attorneys, the right to unreasonably delay or detain the expert witness. Later in the record, we find that it was announced to the court that Dr. Herndon was in attendance on the court, apparently out in the hallway, and that Dr. Herndon had advised one of the trial lawyers that he had office practice scheduled at 1:00 P.M. on that day. Dr. Herndon had apparently stated to the attorney that it was imperative for the physician to return to his patients. The Court was advised of this outside the presence of the jury. Apparently, the scheduling of Dr. Herndon was a problem. The Court responded that: "I don't know what to do about the scheduling problem."

Then one of the attorneys for the carrier responded that they would have had him on "live" at 10:30 if the opposing counsel hadn't been reading lengthy cross-examination, apparently from a long deposition. It seems fair to state that the relations between the trial attorneys was less than amicable. We say this because the deposition reader responded:

> "Well, you subpoenaed him to be here and you demanded him to be here yesterday and today and that's your right, but don't come blaming me."

The Court then decided to get off the record and there was, apparently, considerable discussion between counsel for both parties and the Court. We do not know what happened. Certainly it has been customary in the past, in Jefferson County, for the trial attorneys to accomodate the medical witnesses by putting them on out of order. We cannot tell, from this record, the extent of the real problems here: whether the problems arose from the personalities or the likes or dislikes of the trial lawyers. Nevertheless, we do not find enough in the record to delete the $900 awarded in the judgment. We think the burden was on the Appellant to show reversible error on this point; it failed to do so.

The recovery for claimant Smith we conclude should be 150 weeks at $133.00 per week. Judgment is reversed but rendered according to this opinion.

REVERSED AND RENDERED.