Herbert HECTOR, Jackie Hinkle,
Daniel Johnson, & William
Biggs, Appellants,

v.

W.B. THALER, Lester Beaird, James Collins, C.E. Lamatrice, L.D. Ellis, George Pierson, Richard Belanger, Richard Briggs, Wayne Scott, Carl D. Vest, Texas Department of Criminal Justice, & Texas Department of Criminal Justice—Institutional Division, Appellees.

No. 01–95–00873–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

June 6, 1996.

Rehearing Overruled Aug. 15, 1996.

Herbert Hector, Huntsville, pro se.

David W. Ashmore, Austin, for appellees.

Before COHEN, O'CONNOR and WILSON, JJ.

## OPINION

COHEN, Justice.

Appellants are prison inmates who sued appellees, prison employees, the Texas Department of Criminal Justice (TDCJ), and the Texas Department of Criminal Justice—Institutional Division (TDCJ–ID), alleging that the prison is too noisy. The trial judge granted summary judgment. We affirm.

In 1992, appellants sued, alleging appellees negligently failed to enforce the prison's low-volume radio regulation. The suit was dismissed as frivolous, pursuant to TEX.CIV. PRAC. & REM.CODE ANN. § 13.001 (Vernon Supp.1996), and they appealed. A panel of this Court held that prisoners do not have a constitutionally-protected right to a noise-free environment, but observed that appellants did not allege constitutional violations. *Hector v. Thaler*, 862 S.W.2d 176, 178 (Tex. App.—Houston [1st Dist.] 1993, no writ) (hereafter called *Hector I* ). The panel quoted the low-volume radio rule and set forth appellants' allegations that:

> (1) inmates regularly violate the rule; (2) appellees have a duty to enforce the rule; (3) appellees do not enforce the rule; (4) appellees admit a noise problem exists; (5) appellees told appellants to help the building major enforce its own rules; and (6)

appellants have physical and mental damages from appellees' acts or omissions.

*Id.* The panel reversed and remanded, holding, "Appellants asserted claims that have arguable bases in law or in fact; thus, the trial court abused its discretion in dismissing the claims as frivolous." *Id.* at 179. This is a further appeal of the same suit that was ruled on in *Hector I*.

In points of error one and two, appellants contend the trial judge erred by granting summary judgment.

In their fifth amended original petition, appellants assert five causes of action: (1) guards yell too loudly, too often, too late, and they loudly slam doors unnecessarily; (2) inmates play their radios too loudly; (3) appellees play televisions too loudly; (4) the above claims show gross negligence, give appellants headaches, make them nervous, keep them awake, and make them depressed; and (5) appellees fail to enforce rules requiring inmates to wear headphones. Appellants contend the prison failed to make, enforce, or follow rules against noise. The judge granted summary judgment without stating any grounds. Thus, we will affirm if any of appellees' theories were meritorious. *See Rogers v. Ricane Enter. Inc.*, 772 S.W.2d 76, 79 (Tex.1989).[1]

In *Johnson v. Kinney*, 893 S.W.2d 271 (Tex.App.—Houston [1st Dist.] 1995, no writ), Johnson sued the TDC because it failed to enforce its rules to keep his fellow inmates from talking too loud and playing their televisions too loudly. A panel of this Court (Justices Hedges, Cohen, and Wilson) that included none of the panel members in *Hector I* (Justices Duggan, Dunn, and Andell) held that such a claim had no arguable basis in law and therefore affirmed a judgment dismissing the suit as frivolous. The *Johnson* court wrote:

1. Appellees moved for summary judgment on the following grounds:
   1. Prison employees do not owe prisoners a duty to enforce prison rules;
   2. Appellants' claims are for negligent infliction of emotional distress, a cause of action not recognized in Texas;
   3. Prison employees are entitled to official immunity;
   4. There is no legal duty on the part of private persons to enforce TDCJ noise restrictions,

We conclude that appellant's claim has no arguable basis in law. He complains that TDCJ officials had an obligation to enforce the regulations in the Inmate Orientation Manual and that he has standing to complain of their negligence when they fail to do so. We do not believe that state law recognizes a right to damages for prison officials' negligent or even gross negligent failure to enforce rules applicable to the inmates.

*Id.* at 272–73. This holding conflicts with the holding in *Hector I*. We disagree with *Hector I's* apparent holding that a cause of action exists for failure to enforce the prison's noise rules. However, this case is distinguishable from *Hector I*.

■ First, *Hector I* merely held that this case was not patently frivolous. It did not hold that a summary judgment could not be granted after further development, as occurred here. This is true even if the reason for the summary judgment is, as we hold, that there is no state law cause of action for the negligent failure to make or enforce internal prison rules against excessive noise.

■ Second, *Hector I* sought to distinguish *Johnson v. Lynaugh*, 800 S.W.2d 936 (Tex.App.—Houston [14th Dist.] 1990, writ denied), by pointing out that *Johnson* alleged a federal constitutional violation, whereas *Hector I* alleged a violation of TDC noise rules. We find this distinction unpersuasive. The *Johnson* plaintiffs complained of the same low-volume rule that appellants complain of here. *Id.* at 938–39. They claimed that TDC violated the federal constitution by failing to enforce its own low-volume rule. On this contention, they lost twice in the 14th Court of Appeals. *Id.* at 939; *Johnson v. Ozim*, 804 S.W.2d 179 (Tex.App.—Houston

thus TDCJ and TDCJ–ID cannot be liable to appellants; and
   5. Appellants failed to show how TDCJ and TDCJ–ID are liable under the Tort Claims Act because appellants' petition provides no basis for liability of a private person.
   We follow the usual summary judgment standard of review. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

[14th Dist.] 1991, writ denied). The Texas Supreme Court twice denied review. Thus, this claim has been held frivolous at least three times, twice by the 14th Court of Appeals and by this Court in *Johnson v. Kinney*. We hold that a claim for failure to make or enforce prison noise rules is no more meritorious under state law than under federal constitutional law.

Prisoners do not have the same rights as others, and courts are ill-suited to micromanage the state prison. *Johnson v. Ozim*, 804 S.W.2d at 181; *Johnson v. Lynaugh*, 800 S.W.2d at 938–39. In *Ozim*, the court held that excessive noise does not rise to the level of a health threat. 804 S.W.2d at 181. We hold that, under the facts of this case,[2] it does not rise to the level of a judicially cognizable health threat. Despite the huge volume of litigation over prison conditions in this state and nation over the last 20 years, much of which has been won by inmates, appellants cite no authority to the contrary.

The dissenting opinion cites decisions by federal trial and intermediate appellate courts granting relief to prisoners. In one, prison officials took specific action against the plaintiff. *Castor v. Mitchell*, 355 F.Supp. 123 (W.D.N.C.1973) (interrupting his sleep every 30 minutes while in solitary confinement). In another, noise was allegedly created to harass all inmates. *Lewis v. Lane*, 816 F.2d 1165 (7th Cir.1987). Those facts differ from these. The noise here is not specifically directed against appellants; in fact, their complaint alleges that much of it comes from other prisoners' radios and from television provided for the benefit of all inmates. In *Howard v. King*, 707 F.2d 215 (5th Cir.1983), the inmates claimed they were forced to work seven days a week, which appellants have not alleged. In *Rhem v. Malcolm*, 371 F.Supp. 594, 627–28 (S.D.N.Y. 1974), the court granted injunctive relief for excessive noise in a suit by unconvicted pretrial detainees, alleging federal constitutional violations, under 42 U.S.C.1983. *Id.* at 597. Appellants are not pretrial detainees; they are convicted felons. More important, this

Court has already held in an earlier appeal of this very case that, "We agree that appellants do not have a constitutionally protected right to a noise-free environment." *Hector I*, 862 S.W.2d at 178 (Duggan, Dunn, and Andell, Justices); *accord Johnson v. Lynaugh*, 800 S.W.2d at 938 (freedom from excessive television noise is not a right secured by the United States Constitution). Thus, we do not consider these authorities to be controlling. Nor are we persuaded by the fact that "in other contexts," as the dissenting opinion states, suits for excessive noise have been allowed. Prison is a different context than any of them. *See* footnote 2, *supra.* Prisoners do not have the same rights as people "in other contexts."

Points of error one and two are overruled.

In their third point of error, appellants assert the judge who heard their recusal motion erred by denying it and also by refusing to allow them to call as a witness the judge they sought to recuse.

**Recusal Motion**

Appellants moved to recuse the trial judge, Judge McAdams, alleging (1) his impartiality might reasonably be questioned, (2) he had a personal bias or prejudice against them, specifically, and against prisoners generally, (3) he had an interest that could be substantially affected by the outcome of the proceeding, and (4) he ignores procedural rules. Judge McAdams refused to recuse himself, and Judge Black held a hearing on the recusal motion.

■ Appellants were the sole witnesses. Hector testified that Judge McAdams always rules against prisoners, often without adequate time for them to respond, and other prisoners also believe inmate litigation is treated unfairly in Walker County.

Hinkle testified that before he was incarcerated, acquaintances from Huntsville laughed about inmate litigation because they knew TDCJ controlled Walker County and that the inmates could never win. Hinkle

---

**2.** The noise that appellants complain of is not job related, for example, the loss of hearing from having to work without ear protection in a loud manufacturing plant.

It is the noise predictably resulting from housing many people close together.

testified that someone in every family in Walker County is connected to the TDCJ. Hinkle also testified that a prison employee told him it was impossible for inmate litigants to win because a judge would not rule against his neighbors. Moreover, Hinkle testified that other employees and prisoners have told him inmate litigation in Walker County is a losing proposition. Finally, Hinkle testified that in the present case, Judge McAdams always rules for the officials and TDCJ without permitting appellants to respond, thus demonstrating his bias against prisoners.

Johnson testified that in a previous lawsuit in which he was a party and Judge McAdams was the trial judge, he encountered repeated difficulties having the defendants served. When the defendants were served and did not answer, Judge McAdams refused to grant a default judgment and also refused to rule on several discovery motions. Prison employees have told Johnson he cannot win in Walker County courts. Finally, Johnson testified that Judge McAdams routinely grants motions without allowing appellants to respond.

Judge Black was free to not believe this testimony. Thus, there was no abuse of discretion. Tex.R.Civ.P. 18a(f).

**Trial Judge as Witness**

■ Judge Black refused appellants' request to have Judge McAdams testify at the recusal hearing. This was not error because the record does not show that Judge McAdams was either subpoenaed or present.

We overrule appellants' third point of error.

■ In their fourth point of error, appellants assert the trial judge erred by failing to grant their motion for a free transcript and a free statement of facts. Both documents have been filed in this court. Therefore, appellants have not been harmed.

Appellants timely filed declarations of indigency, which were not contested. Thus, they were entitled to a free transcript and statement of facts. Tex.R.App.P. 13(k), 40(a)(3)(E), and 53(j)(1). The cost bill says nothing about the statement of facts. It lists a $684 charge for the transcript, but in place of a receipt, the District Clerk has written, "No fees collected—State inmates—Filed Pauper's Oath." The court reporter's certificate from the hearing of June 5, 1995 states, "I have charged plaintiffs the sum of $124 for preparing said statement of facts." We agree with appellants that no such charge was authorized and none should be collected. If it has been paid, appellants should seek relief in the trial court.

Point of error four is overruled.

The judgment of the trial court is affirmed.

O'CONNOR, J., dissenting.

O'CONNOR, Justice, dissenting.

In its zeal to rid the prison system and employees of vexatious inmate litigation, the majority ignores established summary judgment standards of review to reach its desired result. Consequently, I dissent.

### I. Law of the Case

Before discussing the merits of the motions for summary judgment, I must state my disagreement with the majority on its discussion of this case as it first appeared before this Court, *Hector v. Thaler*, 862 S.W.2d 176, 178 (Tex.App.—Houston [1st Dist.] 1993, no writ) (*Hector I*). In this opinion, *Hector II*, Justices Cohen and Wilson disagree with the holding of *Hector I*. Procedurally, I do not believe one panel can disagree with an opinion of the Court. When a panel disagrees with an opinion that is final, we must vote as a full court. It would result in chaos if one panel could ignore another panel's decision.

In addition to disagreeing with *Hector I*, the majority attempts to distinguish *Hector I* from *Hector II*. I do not believe the two cases can be distinguished. Once a panel of this Court found error in the earlier appeal, explained the reasons for the error, and the appellants corrected the error and appealed again, one panel should not tell them that another panel was wrong.

In *Hector II*, Justices Cohen and Wilson identify a conflict between *Hector I* (Justices Duggan, Dunn, and Andell) and another opinion from this Court, *Johnson v. Kinney*,

893 S.W.2d 271 (Tex.App.—Houston [1st Dist.] 1995, no writ) (Justices Cohen, Wilson, and Hedges). As for *Johnson*, it makes the statement the inmates do not have a cause of action against the Texas Department of Criminal Justice (TDCJ) for TDCJ's failure to enforce the rules applicable to the inmates. *Id.* at 272–73. While it is true that the TDCJ rules do not create a cause of action, it is also true that the rules are some evidence to support the inmates' negligence claims. For example, although provisions under the Transportation Code that regulate automobile speed on a highway do not create a cause of action, by pleading the statute the plaintiff can raise the issue of negligence per se. By pleading the TDCJ rules, the inmates advance their argument that the prison system was negligent. Thus, *Johnson* does not control the outcome of this case.

## II. The Officials' Motion For Summary Judgment

The prison officials' motion for summary judgment was based on three grounds: (1) the prison officials do not owe the inmates a duty to enforce prison rules; (2) the defendants are entitled to official immunity; and (3) the inmates did not show how TDCJ and TDCJ–ID are liable under the Texas Tort Claims Act because they have no cause of action for negligent infliction of emotional distress, which is not recognized in Texas.

As to ground (1), the "no duty to enforce prison rules" argument, although the inmates claim the prison officials have a duty to enforce the prison rules, the inmates also plead a cause of action for negligence, separate and apart from the prison rules. That they also allege a duty to enforce prison rules does not nullify their allegations of negligence under the Tort Claims Act.[1]

As to ground (2), none of the defendants were entitled to the affirmative defense of official immunity because they presented no summary judgment proof—not one affidavit

was filed in support of their motion for summary judgment.

As to ground (3), the "no cause of action for negligence infliction of emotional distress" argument, the inmates claim they are not asserting a cause of action for negligent infliction of emotional distress. They claim that while some of their injuries are emotional, their cause of action is not for negligent infliction of emotional distress. Their cause of action is for negligence.

Thus, if the inmates have presented a claim based on negligence for which the Tort Claims Act waives governmental immunity, we should reverse this summary judgment.

The majority affirms the summary judgment with two blanket statements:

> We hold that, under the facts of this case, [the noise] does not rise to the level of a judicially cognizable health threat. Despite the huge volume of litigation over prison conditions in this state and nation over the last 20 years, much of which has been won by inmates, appellants cite no authority to the contrary.

I disagree with the majority on both points, the facts and the law.

## A. The Facts in the Petition & the Response

The inmates make the following factual allegations in their petition and their response to the motion for summary judgment:

* The inmates made formal grievances on all these matters.

* Most of the employees slam the cellblock doors at Ellis Unit.

* Most TDCJ employees begin yelling at the Ellis Unit at 3 a.m.; the yelling continues unabated all day; at other units of TDCJ, the employees enforce the policy rules and there is no excessive yelling; the yelling could be reduced by modifications to the cell door mechanism.

---

1. The prison officials do not ask for summary judgment against the inmates' negligence claims, which itself is a ground for reversing the summary judgment. Paraphrasing the Supreme Court in *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 805 (Tex.1994), whatever the merits of the defendants' position regarding the inmates' negligence claims, we cannot affirm the summary judgment because the defendants did not assert that issue as a ground for summary judgment in their motion to the trial court. Therefore, if for no other reason, the summary judgment should be reversed against the prison officials.

* There is excessive noise from personal radios of inmates.

* There is excessive television noise that emanates from 40 individual cell speakers for up to 18½ hours per day; the TDCJ employees control the speakers by remote device.

* The TDCJ employees have refused to enforce the Ellis I Unit's present "headphone policy," which requires inmates to use headphones.

* The noise level reaches and exceeds 85 decibels.

* The noise causes the inmates depression, frustration, severe mental and emotional distress, headaches, fatigue, and loss of needed rest and sleep.

In support of their argument about the damage that noise can cause, the inmates attached three articles to their response. Quotes from those articles that support their response include:

> Prolonged exposure to noises more that 85 db (decibels) can cause gradual hearing loss.
>
> "Noise can drive you crazy," James Hall, Chief of Audiology at the University of Texas Speech and Hearing Institute. "It's more than annoyance. It's unhealthy to have that constant exposure," said Mr. Hall.

*Noise*, HOUSTON CHRONICLE, Aug. 28, 1991, at D 1–5.

> Without sleep, tempers flare faster and hotter at the slightest offense. Two nights of skimpy sleep and rote functioning is affected. A typical adult needs about eight hours of sleep to function effectively.

TIME, Dec. 17, 1990, at 79–80.

> Scientists measure sound intensity in decibels (db). Sound causes thousands of tiny hairs in the inner ear to vibrate, triggering nerve impulses to the brain, which are perceived as sound. Prolonged exposure to very intense levels can irrevocably damages some of the delicate inner-ear hairs. People exposed to loud environments suffer elevated levels of cholesterol, more stomach and intestine ulcers, higher blood pressure and more heart beat abnormalities. When incessant noise prompts the reactions hour after hour the result is stress, fatigue, labored breathing, impaired sleep and the health damage these cause.

*How Noise Can Harm You*, READER'S DIGEST, Mar. 1989, at 121.

The inmates' allegations and summary judgment proof were unrebutted by defendants, who filed no summary judgment proof.

## B. The Law

### 1. Summary judgment procedure

Rule 166a does not permit a court to grant a summary judgment based on facts of the case; a summary judgment is proper only when the facts are established as a matter of law. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 472 (Tex.1991). The majority states: "We hold that, **under the facts of this case,** [the noise] does not rise to the level of a judicially cognizable health threat." (Emphasis added.) By the very sentence, the majority acknowledges its violation of summary judgment procedure.

### 2. Substantive law

The majority erroneously states there is no authority for the proposition that an inmate can bring a cause of action for excessive noise.

In *Castor v. Mitchell*, 355 F.Supp. 123, 125 (W.D.N.C.1973) (tort suit), an inmate brought a suit against the prison officials for placing him in punitive segregation, during which guards interrupted his sleep every 30 minutes by shining a light in his eyes or by speaking to him. *Id.* The inmate prevailed and was awarded nominal damages of one dollar. The court noted that a prisoner does not forfeit rights to humane treatment and due process by conviction of a crime. *Id.*

In *Rhem v. Malcolm*, 371 F.Supp. 594 (S.D.N.Y.1974) (class action suit against the prison officials for declaratory and injunctive relief from prison conditions), the inmates of the infamous "Tombs" in New York complained about, among other things, excessive noise. *Id.* at 627–28. The court found the noise level constituted a health threat and ordered the prison officials to make remedial

conditions which would "assure a tolerable living environment." *Id.*

In *Lewis v. Lane,* 816 F.2d 1165, 1171 (7th Cir.1987) (§ 1983 suit alleging certain policies and conditions constituted cruel and unusual punishment), the court reversed a summary judgment granted against the inmates who complained, among other things, that the guards tapped on the cell bars to harass the inmates. *Id.* at 1171. The Seventh Circuit held that if the prison administrators used a security measure for the purposes of harassing the inmates, the eighth amendment might be implicated. *Id.*

In *Howard v. King,* 707 F.2d 215, 217 (5th Cir.1983) (§ 1983 suit), the inmates complained that they were deprived of proper rest because they were forced to work every day of the week, which caused them physical and mental pain. The Fifth Circuit held that the inmates had pleaded a cause of action that should have survived the motion for summary judgment. The court reversed because the inmates alleged the deprivation of proper rest, which it presumed was "a basic human need." *Id.* at 220.

In other contexts, the courts have recognized that excessive noise is compensable as a cause of action.

Tort—*Gainesville, H. & W. R.R. v. Hall,* 78 Tex. 169, 14 S.W. 259, 260 (1890) (holding noise from operation of defendant's trains on tracks about 37' away was compensable as nuisance); *Hassell v. Missouri Pac. R.R.,* 880 S.W.2d 39, 44 (Tex.App.—Tyler 1994, writ denied) (recognizing that excessive noise can be a tort); *Gandy v. Southwestern Bell Tel. Co.,* 341 S.W.2d 554, 555 (Tex.App.—San Antonio 1960, no writ) (plaintiff sued telephone company for injury to ear when phone emitted explosive sound while earpiece was close to plaintiff's ear).

Workers' compensation and similar schemes—*Minyard v. Missouri Pac. R.R.,* 889 S.W.2d 10, 12 (Tex.App.—Tyler 1994, no writ) (damage to hearing from job-related noise is compensable under FELA); *Billman v. Missouri Pac. R.R.,* 825 S.W.2d 525, 526 (Tex.App.—Fort Worth 1992, writ denied) (damage to hearing from job-related noise is compensable under FELA); *INA v. Smith,* 765 S.W.2d 524, 528 (Tex.App.—Beaumont 1989, writ denied) (loud noises for long periods of time can damage hearing, which is compensable under workers' compensation scheme); *Stone v. Fidelity & Cas. Co.,* 443 S.W.2d 783, 784 (Tex.Civ.App.—Texarkana 1969, no writ) (damage to hearing from job-related noise is compensable under workers' compensation); *see also Crisman v. Odeco, Inc.,* 932 F.2d 413, 417 (5th Cir.1991) (damage to hearing from job-related chemicals is compensable under Jones Act.)

Damage to property—*City of Houston v. McFadden,* 420 S.W.2d 811, 814 (Tex.Civ. App.—Houston [14th Dist.] 1967, writ ref'd n.r.e.) (continual noise can constitute a "taking" of property, in the constitutional sense); *see also Felts v. Harris County,* 915 S.W.2d 482, 486 n. 5 (Tex.1996) ("Under exceptional circumstances, traffic noise may be so significant that it severely impairs the ownership interest in property.").

Thus, I think we must address the issue whether the inmates presented a cause of action under the Tort Claims Act.

### III. The Governmental Entities' Motion for Summary Judgment

The governmental entities, TDCJ and TDCJ–ID, claim the inmates did not plead a cause of action under the Tort Claims Act because the TCDJ's policies are not "tangible property." The Texas Tort Claims Act waives a state governmental unit's immunity from liability for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX.CIV.PRAC. & REM.CODE § 101.021(2).

In response, the inmates claim their factual allegations against the governmental entities contain the elements of duty, breach, causation, damages, and use of tangible personal or real property. Specifically, in the first cause of action, "the condition or use of tangible or real property" is the cell doors, the cell door opening and closing mechanism, and the cellblock structure itself. Such property constitutes tangible personal or real property within the meaning of the Tort Claims Act. *City of Waco v. Hester,* 805

S.W.2d 807, 815 (Tex.App.—Waco 1990, writ denied) (use of dayroom and steel door); *Murphy v. Galveston County*, 788 S.W.2d 938, 939 (Tex.App.—Houston [14th Dist.] 1990, writ denied) (door of jail cell). In the second cause of action, the tangible property involved is the radios furnished to the inmates and the TDCJ and TDCJ–ID–owned antenna system. In the third cause of action, the tangible property is the remote control devices which are owned by the TDCJ–ID and used by employees for television sound setting.[2] In the fifth cause of action, the tangible property is the televisions owned by TDCJ and headphones owned by TDCJ and loaned to inmates. I would hold that the inmates pleaded causes of actions against TDCJ and TDCJ–ID for which the Tort Claims Act waives governmental immunity.

For all these reasons, I would reverse and remand for trial.

2. In the fourth cause of action, the inmates incorporated all the allegations of the first through third cause of action, and alleged gross negligence.